JOHNSTON *et al.* v. JOHNSTON *et al.*

1. **Specific performance:** GIFT. A court of equity will not specifically enforce as against the heirs of the grantor an alleged parol gift of real estate, when the evidence does not clearly establish an executed intention to make the gift, nor that possession was taken or improvements made, relying upon such gift.

2. **Referee:** FINDING IN APPELLATE COURT. The finding of a referee is regarded in an appellate court the same as the verdict of a jury, and can only be disturbed when clearly and manifestly against the weight of evidence.

*Appeal from Scott District Court.*

TUESDAY, JUNE 20.

THESE suits, three in number, were brought in the District Court of Scott county in the order of time as by the referee arranged. The last being an equity action, with injunction as to further proceeding with the others, they were consolidated with it, and all were heard together. They were referred to A. H. Bennett, Esq., whose excellent report we copy in full, as being a reasonably concise and perspicuous statement of the cases.

"PLEADINGS.

"The first of the above entitled suits is commenced by petition for partition of land of Joseph Johnston, deceased,

and vs. Robert C. Johnston, in which suit Robert C. John-
ston is made one of the defendants. Petition No. 7621,
filed May 27, 1863.

"No answer was filed in said suit by any of the defend-
ants, and judgment confirming the shares and interest of
the respective parties to said real estate, as alleged in said
petition, was obtained at the August Term, 1863, of the
District Court. And at the November Term of said court
the referees appointed to partition said real estate reported
that the same could not be divided without great prejudice,
and recommended that the same be sold. And on the
4th day of December, 1863, a temporary injunction was
obtained, restraining plaintiffs in said suit from taking any
further proceedings.

"In the second of the above entitled suits, No. 7622, a
petition was filed May 27, 1863, claiming rent from and
including 1853, to and including 1856, at $150 on a year,
with interest; and also from 1856 to the 28th of February,
1860, an annual rent of $300; and also a note dated Feb-
ruary 2d, 1853, and signed by R. C. Johnston, and made
payable to Joseph Johnston, in one month after its date,
for $39; and also $75 paid to R. C. Johnston on the 26th
day of April, 1853, for which he agreed, in writing, to
deliver to said Joseph Johnston, on his farm in Princeton,
Scott county, five thousand feet of fencing boards and
some fencing posts; and also $200 had and received by
the said R. C. Johnston to the use of said Joseph Johnston.

"The defendant, R. C. Johnston, filed his answer and
cross-bill to said suit, August 4, 1863, in which he denies
any indebtedness, and sets up, by way of cross-bill, that
he is the owner of said real estate, under and by virtue of
a parol agreement, or gift from his uncle, Joseph Johnston;
and he also claims pay for improvements made upon said
farm by him, in the sum of $2,666. He also prays that
this suit may be consolidated with the particular suit above

named, and that plaintiffs in said suits may be enjoined from further proceedings therein; and that they may be decreed to specifically perform the parol agreement of said Joseph Johnston, made in his lifetime with this defendant, and that he may recover of them the cost and value of said improvements, &c. By an amended answer, filed September 13, 1864, said defendant pleads the statute of limitations to the plaintiff's claim for rent up to and including the year 1857; also to the note of $39, and to the claim of $75.

"In the third entitled suit above named, No. 7930, R. C. Johnston files his bill in equity, December 12, 1863, in which he alleges,

"1. That Joseph Johnston, deceased, was the owner of the real estate in controversy, in September, 1858.

"2. That Joseph Johnston was the uncle and guardian of the plaintiff.

"3. That in September, 1858, Joseph Johnston, by way of advancement to plaintiff, who had been brought up by said Joseph Johnston, made his parol promise to plaintiff, that if he would go upon said real estate and improve it, he would make him a deed of it within one year after he went upon said land to live. Plaintiff relying upon said promise, did go upon said land and improve it, and in June, 1859, notified said Johnston of that fact.

"4. And relying upon said promise, plaintiff improved said land to the amount of $2,566, and that said improvements are now upon the land.

"5. That Joseph Johnston died in February, 1860, before the year had elapsed, without making a will or a deed. George Johnston was appointed administrator of the estate of Joseph Johnston, and that on the 27th day of May, 1863, the suits above named were commenced by him against this plaintiff; that one of said suits is an action at law, and a judgment against the plaintiff in said suit

would bar him of his rights. That the other is a suit for partition of said real estates.

" That he put in his defense to the first of said suits, to wit: the suit at law, No. 7622, and agreed with J. T. Lane, attorney for plaintiffs in said suits, that this plaintiff need not file his answer in said partition suit until the prayer in plaintiff's cross-bill in suit No. 7622 had been disposed of.

"That, relying upon this promise, this plaintiff made no defense to said partition suit, but that at the August Term, 1863, said Lane defaulted this plaintiff in said partition suit, which was not known to this plaintiff or his attorneys till after the said term had fully passed, and that this plaintiff is prejudiced thereby, and that referees have reported in favor of selling said farm, and that such sale would deprive him of his rights.

" 7. He makes certain parties defendant, to wit: the heirs of Joseph Johnston, and prays that the plaintiffs in each of the suits No. 7621 and No. 7622 may be enjoined from further proceedings until plaintiff's equities are settled; that said suits may be consolidated with this suit; that defendant, George Johnston, may be decreed to specifically perform the parol agreement made by his intestate, to this plaintiff, or to pay for said improvements on said farm.

" The defendant, George Johnston, filed his answer to the above bill in equity, December 12, 1863, denying all the allegations in plaintiff's bill, and alleging that R. C. Johnston was the agent of Joseph Johnston, and that as such agent he was authorized to use the rent and income of said lands, in improvements and in paying the taxes, and that he collected the rents during all that time, and has not accounted for the same.

"September 13, 1864, R. C. Johnston filed his amended petition, in which he prays that George Johnston, executor

of Joseph Johnston, deceased, may be decreed to perform specifically the contract set forth in the bill in equity.

## "STATEMENT OF FACTS.

·"In 1853, Joseph Johnston was the owner of N. W. ¼ and the S. W. ¼ of section No. 23, in township No. 80, N. of R. 4 East, in Scott county, Iowa; and during that year R. C. Johnston, who was the nephew, and had been the ward of said Joseph Johnston, came to Iowa, and at the request of said Joseph Johnston, took charge and control of said land. The arrangement does not seem to have been a very definite one, but from subsequent transactions between the parties, and admissions and acts by one and the other in relation to this property, I am led to the conclusion that Joseph Johnston was very desirous of having this property improved; that he did not expect any income from it, and never asked R. C. Johnston to account to him for any rents or profits. In this way the matter went along, R. C. Johnston taking charge of the property, paying the taxes, and obtaining only enough income from it to pay expenses and to make some slight improvements, till the agreement of 1858. Up to this time R. C. Johnston had not resided upon the farm, but in an adjoining county, making occasional visits to it. The improvements upon it were slight and unimportant.

"The buildings were poor and untenantable, and the fences of but little value; some fifty acres of the land had been broken, but very badly cultivated. At this time, and at times previous, Joseph Johnston made certain promises and held out inducements, not directly to R. C. Johnston, but to other parties who communicated the same to said R. C. Johnston at his request, which, though somewhat vague, indefinite and equivocal, may have had, and I think did have, more or less influence on R. C. Johnston, in regard to his subsequent management of said property.

"In 1858, R. C. Johnston commenced making permanent and extensive improvements upon said farm, and, in 1859, moved upon the same, with the knowledge, assent and request of Joseph Johnston, and has occupied said premises ever since. I find that no new contract seems to have been made between them. From 1858 to the time of death of Joseph Johnston, 28th February, 1860, R. C. Johnston had broken more than 100 acres upon said farm, and had fences, or had materials on the ground to fence about 200 acres of it. He had built two houses, a stable, granary, hog-pen, &c., dug a well and cistern, and set out trees, and paid all the taxes. After the death of Joseph Johnston, some considerable improvements were made at the suggestion of George Johnston, executor, and one of the heirs of Joseph Johnston; which consisted mainly in digging a well, seeding down to timothy about 60 or 70 acres, and doing some additional fencing.

" No accounts appear to have been kept or required by either Joseph or R. C. Johnston. I do not find that R. C. Johnston ever claimed to be the owner of these premises till after the commencement of these suits. The claim for seventy-five dollars furnished by Joseph Johnston to R. C. Johnston to pay for timber in 1853, I find was paid by delivering timber upon said farm to R. C. Johnston in 1854 and 1855.

"I also find that the income of said farm from 1853 to the year 1858, did not amount to any more than the taxes, improvements and expense of taking care of the same, and up to that time the said R. C. Johnston was not indebted to Joseph Johnston in any sum whatever on account of the use and rents, and profits of said farm. From 1858 to 1860, I state the value of the improvements made upon said farm by R. C. Johnston to be as follows, viz.:

One hundred and twenty acres broken, ...... $360 00
Fencing 150 acres, material, labor etc.,....... 525 00

Johnston v. Johnston.

| | |
|---|---|
| Cistern, | $25 00 |
| Horse stable, sheds, and hog-pen, | 350 00 |
| Two houses, | 900 00 |
| Corn-crib and wagon shed, | 50 00 |
| Locust trees, | 30 00 |
| | $2,240 00 |

"Improvements since March, 1860:

| | |
|---|---|
| Seeding with timothy, | $100 00 |
| Well, | 25 00 |
| Seeding feed lot, etc., | 100 00 |
| | $225 00 |

"I find the value of the use and rent of said farm as follows:

| | |
|---|---|
| For 1858, | $100 00 |
| do 1859, | 100 00 |
| do 1860, | 200 00 |
| do 1861, | 275 00 |
| do 1862, | 300 00 |
| do 1863, | 350 00 |
| do 1864, | 450 00 |
| | $1,775 00 |

| | |
|---|---|
| "I therefore find the value of the improvements, up to March, 1860, to be | $2,240 00 |
| "And the rents and profits of said farm, since 1859, up to and including 1864, to be | 1,775 00 |
| "Excess of value of improvements over the rents and profits, | $465 00 |
| "Improvements since March, 1860, and since the death of Joseph Johnston, | $225 00 |
| | 465 00 |
| | $690 00" |

The District Court held, that Robert C. Johnston was equitably entitled to pay for the improvements made after the death of Joseph Johnston, and overruling exceptions by all the parties thereto; confirmed the report of the referee upon this basis, and rendered judgment accordingly. Robert C. Johnston appeals.

*Grant & Smith* for the appellant.

*James T. Lane* for the appellee.

Cole, J. — An examination of the pleadings, evidence and arguments in these cases has brought us unitedly to 1. SPECIFIC PERFORM- ANCE: gift. the conclusion that Robert C. Johnston has not established his claim to the land, and that the report of the referee and the judgment of the District Court thereon must stand affirmed. The evidence is quite voluminous, and although not so much in direct conflict, as is often the case, yet the testimony of Joseph Johnston's declarations as to his purpose to give to Robert C. the land in controversy, and the conclusion sought to be drawn therefrom that he had done so, are inconsistent with the letters and conduct of Robert C. Johnston.

A discussion at length of the evidence would not probably be either satisfactory to the parties or useful to the profession. It does not establish an executed intention by Joseph to give the land to Robert C., nor that possession was taken or held under any supposed gift, nor that the improvements were made relying upon it. The evidence not only falls far short of that clear and satisfactory proof requisite under the law to justify a court of equity, upon parol evidence, to enforce a specific performance of an alleged parol gift of real estate, so as to take the absolute legal title from one party and place it in another, but it is really a matter of grave doubt whether a preponderance of the evidence is not with the defendant. See *Lester* v.

*Foxcraft et al.*, 1 Cole's P. C., 108, and the notes of Hare and Wallace thereto, found in 1st Lead. Cas. in Eq. (vol. 1, 3d Am. ed.), 719, *et seq.*

Upon the question as to the statement of the account for value of rent and improvements, it is probable we would originally have stated it somewhat differently from the referee. But upon this branch of the case, the finding of the referee must be regarded in an appellate court, the same as a verdict of a jury, which, it is well settled, can only be disturbed when it is clearly and manifestly against the weight of evidence. Under this rule, the finding of the referee must stand.

The judgment of the District Court is, therefore,

Affirmed.

2. REFEREE: finding in appellate court.