Eva McDonald, *et al.*, v. Taylor Freemont Basom, Appellant.

102  419|
116  518|

**Evidence:** ORAL AGREEMENT TO TRANSFER LAND: *Part performance.* The burden is upon one asserting a parol agreement by his mother, in consideration that he would cultivate and improve her land and allow her to live with him whenever she chose, to give him the land at her death, to establish by clear and satisfactory evidence the existence of such agreement and his performance of the conditions.

RULE APPLIED. An oral agreement between a son and his father and mother who were about to separate, that the son was to have the use of certain land belonging to his mother, and the title in fee

on her death, in consideration of her having a home with him, is not established where it appears that the declarations of the father touching the agreement were not made in the presence of the mother; that the mother's statements, as shown by several witnesses, expressed no more than an intention to give the land to the son if he took care of her; and that, while one witness testified to a proposition made by the mother as claimed by the son, it did not appear that he assented to the proposition; and where it appears that the mother passed but a small portion of the remainder of her life with the son, and that part of the land was cultivated by a son-in-law.

*Appeal from Carroll District Court.*—Hon. Z. A. Church, Judge.

MONDAY, MAY 24, 1897.

Amos W. Basom, husband, and Eva McDonald, and Victoria J. Winnette, daughters, of Sarah L. Basom, deceased, filed their petition in equity against Taylor Freemont Basom, son and only other heir of said deceased, asking partition of a certain eighty-acre tract of land of which Sarah L. Basom died seized. Defendant answered, alleging, in substance, as follows: That about April, 1873, he entered into an oral agreement with his father and mother, that his mother should have a home with him whenever she chose to live with him; that he would improve and cultivate said land, and that in consideration thereof they agreed to give him the full use of said land, and, at the death of his mother, a clear fee-simple title thereto; that in pursuance of said agreement, and with the knowledge and consent of his father and mother, he took possession of said land, and has remained in possession thereof to the present time, and that he has at all times, and in all things, complied with his part of said agreement. He asks that said agreement be enforced as against the plaintiffs, that they be required to make conveyance to him, and that he be quieted in

the title to said land.  Plaintiffs, in reply, deny that such an agreement was entered into, or that the defendant took possession of said land in pursuance of such an agreement.  They allege that said land was the homestead of Sarah L. and Amos W. Basom, and occupied by them as such, "and that they never concurred in and signed the same joint instrument conveying or incumbering the same.". The case was tried to the court, and the defendant, having the burden of proof, introduced his evidence, at the conclusion of which plaintiffs moved for a decree as prayed in the petition, which motion was sustained, and decree entered accordingly.  Defendant appeals.—*Affirmed.*

*C. C. Nourse* for appellant.

*W. R. Lee* and *George W. Paine* for appellees.

Given, J.—I.  To defeat plaintiffs' right to partition, and to entitle himself to the relief demanded, the burden is upon the defendant to prove that a parol agreement was made as alleged; that he took possession of the land under it; that he gave his mother a home with him whenever she chose to live with him, and that he improved and cultivated the land.  We first inquire as to the alleged agreement, to establish which the proofs must be clear, definite, and conclusive.  *Moore v. Pierson,* 6 Iowa, 298.  The circumstances surrounding the parties in April, 1873, were these:  Appellant, then a young unmarried man, was living with his parents on the land, and devoting his time to the cultivation of it.  Amos W. Basom, because of his ill temper and disagreeable manner, did not live pleasantly with his family, and for that reason decided to leave his wife and children, and return to Pennsylvania, from whence he came, which he did, remaining away about seven years.  After he left,

appellant and his mother continued to live upon the land, he cultivating it, and she doing the housework, until appellant married, in 1874.    In 1875, plaintiff Eva and her then husband, Mr. Heater, lived in the same house, each family having separate apartments and tables, Mrs. Basom taking her meals with appellant.    During that year Mr. Heater worked part of the land in question, and paid the rent to Mrs. Basom. This is said to have been done because of the illness of appellant, rendering him unable to work all the land.    So far as appears, appellant has, with this exception, had full use of the land to the present time, without any rent being demanded or paid therefor.    Mrs. Basom, though spending a part of the time elsewhere, seems to have made her home with appellant on the farm up to 1880, after which she lived elsewhere to the time of her death in 1892.    Part of this time she lived with her husband, Amos W. Basom. The evidence relied upon as establishing the alleged agreement is, in substance, as follows: Appellant testified: "Father said to me: 'I am going to leave.  I am going away and if you will stay and take care of mother we will give you this eighty acres of land at her death.'    And I told him I would.   *   *   *   Father done the principal part of the talking.   *   *   *   Mother says, 'You know father is going away, and you are to stay and take care of me, and after I am done,'—them was her words,— 'after I am done,' she says, 'you can have this place.'" This evidence was objected to as incompetent under section 3639 of the Code, being in regard to personal transactions between the witness and the deceased. It is not questioned on this appeal but that the objection is well taken, and therefore this testimony must be excluded from consideration.    The remaining testimony on this subject is that of several witnesses as to statements made separately by Amos W. Basom

and by his wife, Mrs. Basom. Mrs. Umbaugh says: "He said, in lieu of Freemont taking care of her, that he was to have this eighty acres of land." She said "that Freemont was to have this eighty acres of land for taking care of her, and in any way she spoke of it as Freemont's land. * * * He was to take care of her during her lifetime, and at her death it was his." Mr. Umbaugh, who was present at the same conversation, says: "He told me he was going away for to stay, and that he was going to leave all matters with Freemont,—that is his son,—for that he should take care of the old lady, Mrs. Basom, while she lived." Mr. Carnell testifies that Mr. Basom said "that Freemont would take care of her and the homestead. I calculated to let Freemont have it for taking care of his mother." Mr. McCurdy testifies that Mrs. Basom said: "She expected that when she was dead that Freemont would get the place." Martha Benedict testifies that Mrs. Basom said: "But she calculated that place for Freemont; that he was to have the land he lived on. She did not say what time he was to have it, but she calculated for him to have it." Mary Mogeney and Miss Basom, daughters of appellant, testify that their grandfather said that the land belonged to their father. M. A. Hoyt testifies that Mr. Basom said, when asked who was to take care of the farm: "I have arranged with Freemont to take care of my wife, and we give him the eighty acres the house stands on." W. R. Marshman testifies that he at different times heard Mr. and Mrs. Basom say, in the presence of appellant, that appellant "was to have a clear title to what was called the 'west eighty,' at the death of his mother, provided he would make a home for his mother and take care of her while she lived. He was also to improve and cultivate the land. This conversation I have heard, in substance, oft repeated by Amos W. Basom in the

presence of Taylor F. Basom and myself, and at other times have heard it repeated by Sarah L. Basom, in the presence of Taylor F. Basom and myself. Have heard it frequently talked of in the family to the effect that Freemont was to have the west eighty at the death of his mother, but cannot now recall such conversation when all three were present." It will be observed that, except in the testimony of appellant, none of the declarations of Mr. Basom appear to have been made in the presence and hearing of Mrs. Basom, the owner of the land; and that the statements made by Mrs. Basom, as testified to, were these: That Freemont was to have the property for taking care of her. She expected that when she was dead that Freemont would get the place. She calculated that place for Freemont. That he was to have a clear title at her death, provided he would make a home for her, and take care of her while she lived. There can be no doubt but that about the time her husband left Mrs. Basom did contemplate giving the land to appellant at the time of her death, if he took care of her during her life. There is nothing in any of the testimony, except that of Mr. Marshman, that tends to show more than such an anticipation. According to his testimony, she said, in the presence of appellant, that appellant was to have a clear title at her death, provided he would make a home for her, and take care of her while she lived, and improve and cultivate the land. But it does not appear that appellant assented to this proposition, and, in view of what subsequently occurred with respect to the use of the land, and the home and care of Mrs. Basom, we think the parties did not understand themselves to have made an agreement as alleged. We do not think that the appellant has established the alleged agreement by that clear and satisfactory evidence which the law requires in such cases. This conclusion renders it

unnecessary that we should consider other questions discussed, as, for this reason alone, the judgment of the district court must be AFFIRMED.