AMY CHEW v. SARAH E. HOLT *et al.,* Appellants.

**Title:** INSUFFICIENT EVIDENCE. In partition by the widow of C, the defendant, one of C's sons, claimed title under an oral contract with deceased, acquiesced in by the plaintiff, under which he undertook to care for and support them during life. The parents, defendant, and another son, had lived together on the premises for several years after the date when the alleged agreement was claimed to have been made, plaintiff doing the housework and the father and other son working on the place. Continuously during those years the other son shared the crop. The building and stock was insured in the name of all three, and the taxes were assessed in the name of the father and the receipts ran to him. Improvements were made, but there was no evidence that the money paid therefor did not come from the profits of the land, the manufacture of tobacco, and the care of bees by the father. Defendant had paid the administrator $125, and plaintiff $25, which they supposed to be rent, but which he afterward claimed to be a debt due, and other members of the family denied knowledge of the alleged contract. There was evidence that the father had stated to several that he had turned the place over to defendant, and other evidence that he stated the farm would be defendant's when he was through with it, and that he expected him to have it. *Held,* that the evidence was not sufficient to support defendant's claim.

**Evidence:** TRANSACTION WITH DECEDENT: *Timely objection.* Where the widow of decedent brought partition and a son claimed title by an oral agreement with deceased, objection to the son's testimony as to personal transactions with decedent need not be interposed to the administration of the oath, since there were matters relevant to the issue on which he was competent.

**Unobjected Testimony:** CONSIDERED ON APPEAL. Where the widow of one deceased brought partition, and a son claimed title by virtue of an oral agreement with deceased, his testimony as to dealing with deceased, received without objection, though incompetent under Code, section 4604, must be considered as part of the evidence, on appeal.

*Appeal from Mahaska District Court.*—HON. BEN McCOY, Judge.

MONDAY, MAY 14, 1900.

THE record title to the one hundred and twenty acres of land in controversy was in the name of Asa S. Chew at the time of his death, in 1891. The plaintiff is his widow, and the defendants his six children, five of whom join in the prayer for partition. The other, Edwin C. Chew, claims to be the unqualified owner of the premises by virtue of an oral contract with the deceased, acquiesced in by plaintiff, under which he undertook to care for and support them during their lifetime, and in return was to have said land "at the death of said parents." He alleged he was to handle and improve the farm as his own, which he did; compliance with his obligation, and readiness to comply in the future; and prayed that his title be confirmed, and, if not, that he be allowed for the improvements. In an amendment to the answer, he averred his parents left the farm in 1891, without reasonable cause; that under the contract title vested in him, subject only to the life estate of his father, and that it became absolute upon his death; that the obligation to support and care for the plaintiff is personal only. The reply was a general denial, together with the averment that the premises constituted the homestead of the parents, and plaintiff had not assented to the gift thereof, and asked that, if it be found to have been given to Edwin, the value of plaintiff's support since leaving the farm and during the remainder of her life be determined and made a lien on the land. The other children joined in a general denial. Decree was entered awarding Edwin C. Chew an undivided two-thirds interest in the land, and plaintiff one-third thereof, in lieu of past and future support, with a provision that each should pay a like portion of the costs, dividing attorney's fees equally between counsel for respective parties, and taxing one-half to each, and establishing said costs and fees as a lien against the land. The plaintiff appeals.— *Reversed.*

*J. C. Williams* and *B. W. Preston* for appellants.

*G. W. Lafferty, J. F.* and *W. R. Lacey,* and *Bolton & Bolton* for appellee.

LADD, J.—Caution should be exercised in scrutinizing the oral proofs of dealings between the aged and infirm and those having claims upon their affections. Nothing short of the complete control of the property they have accumulated can be tolerated, but, in guarding their rights, we ought not to forget that people so situated are prone to reach out for aid and relief from care in their declining years to those who, because of their relationship, may be expected to respond. And often conduct which might ordinarily confirm an alleged agreement, because of mutual obligations springing from the ties of blood, should be given no significance. *Shellhammer v. Ashbaugh,* 83 Pa. St. 24; Thornton Gifts, section 398. Though an oral contract to give land, even a homestead, in consideration for support, if partially executed, is binding (*Drake v. Painter,* 77 Iowa, 731, and *Winkleman v. Winkleman,* 79 Iowa, 319), it must be established "by clear, unequivocal, and definite testimony, and the acts done thereunder should be equally clear and definite, and referable exclusively to said contract and gift" (*Truman v. Truman,* 79 Iowa, 509, *Williamson v. Williamson,* 4 Iowa, 281; *Wilson v. Wilson,* 99 Iowa, 693).

II. It is only when a witness is rendered by the statute wholly incompetent to testify that objection must be interposed to the administration of the oath. *Watson v. Riskamire,* 45 Iowa, 231; *Winters v. Winters,* 102 Iowa, 57. Edwin C. Chew was competent to speak on many matters relevant to the issues, though prohibited from testifying to personal transactions with his deceased father. Code, section 4604. He could not with propriety be excluded as a witness, but might be prevented from speaking of such transactions. His testimony concerning

the dealings with the deceased, however, received without objections to his competency, must be considered as a part of the evidence in this case.   *Burdick v. Raymond,* 107 Iowa, 228.

III.   The circumstances disclosed by this record throw much light on the oral testimony bearing directly on the alleged contract.   At the time it is said to have been made (1873) but three of the children were living with their parents, Edwin, Mayhew, and Kesiah.   The latter remained at home until married, in 1879, but in the meantime had not learned of the alleged transfer of the farm.   Mayhew was three years younger than Edwin, not physically strong, but worked continually on the premises up to the date of the father's death.   Appellee, when asked whether Mayhew shared the crops "during the years he was on the place," answered, "Yes, we had them alltogether."   When Mayhew left, immediately after his father's death, in 1891, the cattle were equally divided, each obtaining seventeen head, and Mayhew had eight horses.   He, too, had been kept in ignorance of this alleged contract.   The father, who was a vigorous man of 64 years in 1873, worked according to his strength, at all times having stock of his own on the place, though he did little save care for the bees for several years before his death.   The plaintiff performed the household duties for the family until appellee's marriage, in 1888.   It would seem from these circumstances that there is quite as much ground for claiming that these parents cared for Edwin as that he had cared for them. True, he directed the work and managed the affairs on the farm.   This was not at all out of keeping with the situation, as he was robust in health and possessed of business capacity.   Each of these men assisted in performing the necessary labor, though appellee operated another farm for two, and a thresher for ten, seasons, and acquired an adjoining forty acres.   Each kept stock on the land without thought of rent.   The buildings and stock were insured in the name

of all three. The taxes were assessed in the name of the father, and the receipts ran to him. The mother kept the house as stated. Indeed, there was nothing to point out Edwin as the proprietor, but everything to indicate that he took the lead, as the older and stronger son, in the management of the farm. A barn was built; an addition put on the house; thirty-five acres of brush land cleared, and the farm fenced. Nothing in this record shows the money from which Edwin paid for the help and lumber to make these improvement was not derived from the profits of this land, and from the manufacture of tobacco and the care of bees by Asa S. Chew. All worked, and no reason is suggested by the record for forgetting Mayhew, and giving all to Edwin.

IV. As seen, the facts of the case tend to refute any claim of the existence of such an agreement as is declared by the appellee to have been made. His testimony, in the absence of proper objections, must be considered, though in the light of the facts affecting his credibility. Such agreements are founded, not so much on the promise of food and raiment, as the loving care of filial affection. And if it may be inferred from the situation of the parties that the parents were to be maintained, if at all, where they had lived so long, the keeping pledged should not be understood to be that which might be exacted for compensation from a stranger. The element of duty enters into every such agreement, and, if this is shown to have been ignored, that fact, of necessity, has an important bearing in determining whether any obligation had been assumed or fulfilled. The plaintiff may have left the farm in 1891, when seventy-six years of age, without sufficient excuse, but this in no way justified the appellee's utter neglect of her since that time. True, he insists that he once invited her to live with him, and she put him off, but this is denied by her, and we are inclined to accept her statement. His attitude towards her for six years has been that of absolute indifference, and is

entirely inconsistent with any obligation to give her care and support, and tends strongly to discredit his story. Several members of the family testified that Edwin at first claimed Asa Chew had promised the farm to himself and Mayhew, and that he once agreed to lease it, if the rent was not placed too high. This he denied. To the administrator he paid one hundred and twenty-five dollars, and plaintiff twenty-five dollars, which they supposed to be rent, but, as he claims, on a debt due his father. In view of the denial of all knowledge of such a contract by those likely to have known of it and the circumstances mentioned, we are not inclined to give much weight to appellee's testimony. Other witnesses were called. One Douglas testified to having had several conversations with deceased, at one of which he remarked that "he was getting old, and that he had given the farm to Ed; that Ed was to keep him and his wife during their lifetime, and at their death the farm was to be Ed's;" at another that, "by taking care of him and his wife until their death, the farm was his;" and at still another, that "he was keeping them while they lived, and when they died Ed was to have the farm," and that he had offered Ed a deed, but the latter did not want it. The time fixed was 1887 or 1888. On cross-examination, Douglas was asked whether Asa said, after he and his wife were dead, then the land would be Ed's, and responded, "Yes, I believe he put it in that way." If Mrs. Holt, a sister of appellee, and her husband, are to be believed, as against Douglas, the latter stated to them in 1894 that he knew nothing of any such arrangement. Joseph Atkinson also testified to having a conversation with deceased, when, in response to an inquiry concerning a shed, he stated "that he knew nothing about such matters; that he had turned the place over to Ed; that he didn't know anything about these arrangements." Had this been said of a stranger, it would have been very significant, but, spoken concerning a son at home, it may well have indicated no more than that he had the management

of the farm.   Appellee's cousin S. G. Chew also testified to a conversation, in 1884, concerning some house sills, when deceased remarked that "he had turned the place over to Ed some years ago, and if Ed wanted an addition to the building he would have to build it, he reckoned."   Another version of the conversation was given, but we set out what the witness declared to have been the exact language used. Yet, according to the wife of this witness, Asa Chew was at the time claiming the farm as his own, and declaring that he had done enough for Edwin, though the plaintiff is said to have confided to her that the parents were staying with Edwin, and going to do so, and when gone Ed was to have the home.   These statements to Atkinson and S. G. Chew are not inconsistent with the conclusion that he had merely turned the management of the land over to his son. To others he made statements tending strongly to show that he did not suppose he had parted with the title.   To Abner Atkinson he said, "When we are done with the farm, Ed gets it," or "we are going to give it to Ed," as put on cross-examination; to Efland, that, when he was done with the farm, he expected Ed to have it; to Foster, that he wanted Ed to have the farm when he was through with it; to Goss-nell, that Ed had worked hard, and he calculated after his death that he should have the profits of the farm; and, again, that he expected Ed to have the land when he was done with it.   He thus relates to what he proposed in the future to do rather than what had been done.   He may have wished that Edwin succeed him on the farm; but did he bargain the farm to him?   The contention that a contract existed rests in the main on the evidence of appellee and Douglas, each of whom has been somewhat discredited.   Had there been such an arrangement, it is all but impossible that Mayhew, Kesiah, and plaintiff would not have been so advised, and their negative testimony, under the circumstances, is in the nature of a denial of its existence.   It is hardly conceivable that the almost equal claims of Mayhew to his

father's bounty should have been entirely ignored. No satisfactory explanation of the division of the crops and stock with Mayhew, and the fact of insuring the buildings and stock in the name of the father and two sons, if these belonged to one only, has been attempted. No circumstance, during the eighteen years prior to the time Asa Chew and plaintiff left the farm, inconsistent with his continued ownership, has been proven, and, on a separate reading of the record, we reach the conclusion that appellee has failed to establish a contract by evidence of that conclusive character required by the law. If he has made valuable improvements on the land, these are more than offset by the rents and profits he has received.—REVERSED.