This action is based upon a note for $3,300, dated March 16, 1931, and payable to Citizens Bank of Milo, Iowa. The signature to the note was C.F. Scott Son, by C.F. Scott. This signature was executed by C.F. Scott. This note was secured by a chattel mortgage on certain personal property. This chattel mortgage was also signed "C.F. Scott Son, by C.F. Scott", and was acknowledged by C.F. Scott alone. This note not having been paid, suit to enforce the payment of same and to foreclose the chattel mortgage was instituted by the State Bank of Milo against C.F. Scott Son, C.F. Scott and F.A. Scott, partners under the firm name and style of C.F. Scott Son. In its petition plaintiff alleged that said C.F. Scott Son is a firm composed of C.F. Scott and F.A. Scott, and that each of the defendants is jointly and severally liable to the plaintiff for the indebtedness evidenced by said note. C.F. Scott and F.A. Scott filed separate answers. The answer of C.F. Scott admitted the execution of the note and mortgage; denied that the chattel mortgage was a paramount lien on all the property therein described; alleged that said C.F. Scott was a married man, the head of a family, was engaged in the operation of a farm, and entitled to certain exempt property therein described, that the wife of C.F. Scott did not sign said chattel mortgage, and that said mortgage is absolutely void and of no effect as against said exempt property. The separate answer of F.A. Scott stated that he had no personal knowledge as to the execution of the note and chattel mortgage, and that he therefore denied the same and asked strict proof thereof. Said F.A. Scott further denied expressly that he was ever a copartner in any partnership composed of C.F. Scott Son or in any firm composed of F.A. Scott and C.F. Scott, and alleged that at the time of the execution of the chattel mortgage he was the owner of said property described therein, and that the plaintiff had no right or interest in and to said property by reason of the alleged mortgage thereon. Said answer further alleged that the defendant never signed the said note and never was a party to any transaction or contract whereby he became liable on said note *Page 586 
and had nothing to do with any business contract or transaction out of which the indebtedness evidenced by the note and the chattel mortgage securing the same was created.
Trial was had to the court and a decree entered in favor of the defendants, finding that said F.A. Scott was not liable upon the note and chattel mortgage sued upon, and that he was the absolute owner of certain property described in said mortgage, and that the petition be dismissed as to the defendant F.A. Scott. Such decree further held that the defendant C.F. Scott was entitled to his exemptions as allowed by the law of the state of Iowa and declared certain property described in said chattel mortgage to be the exempt property of said defendant.
From said decree, the plaintiff bank appeals. Two questions are presented for our consideration on such appeal: First, did the trial court err in holding that the defendant F.A. Scott was not a member of the partnership of C.F. Scott Son? Second, did the trial court err in allowing said property to the defendant C.F. Scott as exempt property?
[1] I. Ben Hicks, the cashier of appellant bank, was the only witness for appellant, and no evidence was offered or introduced by appellees. The evidence showed that the appellee C.F. Scott had been indebted to the appellant bank some years prior to the 16th day of March, 1931; that such indebtedness was evidenced by promissory notes and that renewals of said notes had been made at different times; that in December, 1926, a renewal note signed C.F. Scott Son, by C.F. Scott, was given to the bank; that the signature on said note was made by C.F. Scott; that on the same day an account in the name of C.F. Scott Son was opened in appellant bank by C.F. Scott; that on the 16th day of March, 1931, the defendant C.F. Scott executed the note in question and the chattel mortgage securing the same in the banking house of the appellant bank; that at that time nothing was said about the signature attached to said note or as to any partnership or the persons constituting any partnership; that the defendant F.A. Scott at no time signed said note or any note on which the signature C.F. Scott Son appeared, and never acknowledged that said note or any other note had been signed with his knowledge or consent; that C.F. Scott and his wife moved from his farm to the town of Milo and F.A. Scott got married and lived on his father's farm since about the time when the first note was executed in the name of C.F. Scott Son and the *Page 587 
bank account was opened in that name; that, thereafter, both father and son took part in carrying on the operations of said farm; that deposits and withdrawals were made by C.F. Scott in the bank account in the name of C.F. Scott Son in connection with the farming operations of said farm, but there is no evidence that any of said deposits were made by F.A. Scott or that any checks or withdrawals were made by him; that F.A. Scott had a personal account in said bank, but that said account was practically dormant after the opening of the account in the name of C.F. Scott Son. There is no direct evidence that there was ever any agreement of a partnership between C.F. Scott and F.A. Scott, and no evidence that F.A. Scott ever held himself out as a partner in any firm under the name of C.F. Scott Son, or any other name. While the evidence shows that during the greater part of the time the deposits and withdrawals were in connection with the operation of the farm, it does not show that all receipts and disbursements in connection with the farm were handled through the C.F. Scott Son account. In the course of the examination of the witness Ben Hicks, he stated that at one time he had a talk with F.A. Scott in reference to the firm of C.F. Scott Son and in reference to this indebtedness, and in answer to the question as to what said F.A. Scott said in reference to the indebtedness of the firm to the bank, he answered: "He said he knew that they owed the bank up there but didn't know how much."
Appellant contends that the evidence thus presented was sufficient to establish prima facie that a partnership existed and that the defendant F.A. Scott was a member of such partnership. With this contention of the appellant we are not able to agree. It must be borne in mind that the appellant is not here seeking to establish a partnership liability against F.A. Scott on the theory that credit had been extended in reliance on any act or conduct on his part in holding himself out as a partner. The appellant is here seeking to establish a real partnership, that is, a partnership based upon an agreement between the partners, and not what is sometimes known as an ostensible partnership or a partnership by estoppel. It is elementary that a real partnership can only exist as the result of an agreement, either express or implied, and it is the established law of this state that such agreement must be such that the essential elements of a partnership are included therein. As stated in Malvern National Bank v. Halliday, 195 Iowa 734, 192 N.W. 843:
"A partnership has its origin in contract, either express or *Page 588 
implied. It is the result of contract creating a relation or status, and in the solution of the problem presented a court necessarily attempts to find the legal elements essential to the creation of that status. The salient features of an ordinary partnership are (1) a community of interest in profits and losses; (2) a community of interest in the capital employed; and (3) a community of power in administration. These are the primary tests and constitute the indicia of the existence of a partnership. The relation is predicated on mutual consent, and is evidenced by the terms of the contract, the conduct of the parties, and the circumstances surrounding the transaction."
See, also, Veenstra v. Mathews, 194 Iowa 792, 190 N.W. 382; Taylor v. Successful Farming Publishing Co., 197 Iowa 618, 196 N.W. 77; Kinney v. Bank of Plymouth, 213 Iowa 267, 236 N.W. 31; DeLong v. Whitlock, 204 Iowa 701, 215 N.W. 954.
In our opinion, the evidence adduced in this case is not sufficient to establish the essentials of a partnership. It is quite true that our cases have held that, where the evidence establishes an agreement either express or implied for a community of interest in capital and for a division of profits, a mutual liability for losses will then be implied. In this case, however, we do not feel that the evidence is sufficient to establish either the community of interest in capital or a division of profits. The use of the firm name would not of itself establish a partnership, and the evidence does not show that F.A. Scott had knowledge that such firm name was being used. Even if he had been aware of the use of such name, this would not establish a partnership or make him liable as a partner. If it be assumed that the use of the name and the application of the bank account, in connection with the operation of the farm by the father and son, showed an arrangement between them, it would not follow that such arrangement was a partnership agreement. The deposits and payments in connection with the operation of the farm, through the bank account in the name of C.F. Scott Son, could have been a means adopted by C.F. Scott for keeping track of the income and outlay on the farm for the purpose of determining a rent to be paid by the son, or for fixing the amount of wages to be paid to him, for the purpose of keeping track of the income and outlay in connection with the farm without any regard to any agreement or arrangement with the son. In our opinion, the evidence is utterly insufficient to prove the existence of a partnership, and without such *Page 589 
partnership there can, of course, be no liability on the part of the defendant F.A. Scott.
[2] II. It is further contended by the appellant that the court erred in allowing C.F. Scott certain exemptions from the property covered by the chattel mortgage, for the reason that said property was partnership property, that by signing the chattel mortgage and the firm name C.F. Scott represented the property to be partnership property, and that C.F. Scott has not shown himself entitled to exemptions. The ground that the property claimed as exempt was partnership property has been disposed of by what we have said in the preceding division of this opinion. As to the second ground, we are of the opinion that no estoppel can be claimed against C.F. Scott, because we do not believe that the mere signing of the name, C.F. Scott Son, amounted to such a representation as would estop him from denying that it was partnership property.
[3] As to the third ground, however, we believe the trial court was mistaken. Exemptions are the creation of statutory provisions. Under the statute providing for exemptions, C.F. Scott, as a farmer and head of a family, would be entitled to certain exemptions. However, the statute in regard to exemptions is not self-executing. In order that a party may have the benefit thereof, he must both plead and prove his right to the exemptions claimed. The right to exemption was pleaded in this case, but there was no proof thereof. As the burden of proving the exemptions thus claimed was upon the appellee C.F. Scott, his failure to introduce any evidence left the trial court without any evidence upon which to base its finding that he was entitled to the property claimed by him as exempt. Hays v. Berry, 104 Iowa 455, 73 N.W. 1028.
"No exemptions were allowed at common law, and, as the great mass of property is subject to the satisfaction of debts, these are exceptions to the general rule. If, then, it was made to appear that the horse levied on was owned by Berry, and used on the leased premises, the burden was upon him who asserted that the lien did not attach, by reason of the property being exempt, to so prove."
See, also, Dolan v. Sammons, 147 Iowa 466, 124 N.W. 880; Weaver v. Florke, 195 Iowa 1085, 192 N.W. 23.
The decree of the trial court is, therefore, affirmed in so far as it holds that defendant F.A. Scott was not a partner and is not *Page 590 
liable upon the note sued upon in this case; but it is reversed in so far as it holds that the defendant C.F. Scott is entitled to the exemptions claimed by him. Affirmed in part; reversed in part.
ALBERT, C.J., and EVANS, KINDIG, and CLAUSSEN, JJ., concur.