LESTER BUTLER, Administrator, Appellee, v. EDWARD S. LLOYD et al., Appellants; DAISY PATTERSON et al., Appellees.

No. 45349.

MAY 13, 1941.

REHEARING DENIED SEPTEMBER 26, 1941.

Thomas J. Bray, W. H. Keating, and Palmer & Spencer, for appellees.

Harold J. Fleck, McCoy & McCoy, and Wagner & Yoder, for appellants.

MILLER, J.—Plaintiff's petition asserts the following facts: plaintiff is the administrator of the estate of Emma Windell, who died intestate October 22, 1936, leaving surviving her Edward S. Windell, her spouse, but no issue; Edward S. Windell

died intestate April 8, 1938, without having remarried, leaving as his heirs a sister and a nephew; defendants are the administrators and heirs of his estate; Edward and Emma were married about the year 1895; at the time of their marriage they made an oral contract to become partners and did become partners; the agreement provided that all property then owned by either and which should be thereafter acquired would be the property of the partnership and would be owned by the partners in equal shares, regardless of whether the title to said property should be in the name of one or the other or both of said partners; the partnership engaged in the business of loaning money on notes and mortgages and of buying and selling real and personal property and continued until the death of Emma, at which time the partnership was the owner of real and personal property of the approximate value of $100,000; the real estate, being the property of the partnership, was and is personal property; at Emma's death some of the property was in the name of Emma and some in the name of Edward, but all of it was owned equally as partners; Edward, as surviving partner, took possession of all of said property, managed it and retained possession of it, collecting the rents and income until his death; at his death all of Edward's property was the property of the partnership and his interest therein was an undivided one-half interest only; the administrators of Edward's estate took possession of all of said property, have managed the same and collected the income therefrom; Edward's heirs have no right, title or interest in any of the real estate; they have received $4,000 from Edward's administrators which they should repay; the administrators have made other disbursements for which they should account. The prayer was for a decree establishing the partnership and the title to the partnership property and for an accounting.

By amendment to the petition, the heirs of Emma's estate and additional heirs of Edward's estate were made additional parties defendant.

The defendants, who are heirs of Emma's estate, filed an answer and cross-petition adopting the allegations of the petition. They further asserted that the affairs of the partnership were fully liquidated by Edward following Emma's death, but

no accounting was made therefor; that, at Edward's death, his heirs became entitled to one half of the partnership assets which consisted of personal property and to three fourths of the real estate and that the cross-petitioners, as heirs of Emma, became entitled to one half of the personal property and to one fourth of the real estate. The prayer was that the partnership be established and for a decree determining that the personal property was owned in equal shares by the two estates, that the heirs of Emma owned an undivided one-fourth interest in the real estate and the heirs of Edward an undivided three-fourths interest therein, and for an accounting.

The defendants, who are the administrators and heirs of the estate of Edward, filed an answer and cross-petition. The answer denied all allegations not admitted; admitted the identities of the various parties as administrators and heirs; asserted that Edward was the owner of all property of which he died seized or possessed; Emma's only interest therein was that of inchoate right of dower which was lost when she predeceased Edward; the heirs of Edward became the sole owners of such property upon his death; the only interest Edward had in Emma's property was that accorded him as surviving spouse; Edward's ownership of property standing in his own name was open and notorious; the claims now made by the petition and cross-petition of the administrator and heirs of Emma's estate are barred by the statute of limitations because not filed within one year after the opening of Edward's estate; Emma, with full knowledge, permitted Edward to deal with property in his own name, institute actions, make improvements, etc., and hold out to the world that the same was his property so that were she living she would be estopped to claim otherwise and her heirs are now estopped therefrom, and any such claims must be deemed to be waived, and lost by laches; the heirs of Emma acquiesced in Edward dealing with said property after Emma's death, made no claim thereto, and also acquiesced in the handling of said property by the administrators of Edward's estate after his death, until the commencement of this action on June 14, 1939, and are now estopped from making any claim of copartnership, have waived any such claim and the same has been lost by laches. The prayer was that the petition and said cross-petition be dismissed.

The cross-petition of the administrators and heirs of Edward's estate asserts that said decedent died seized of certain real estate of which he was the sole owner and which descended to his heirs at his death; the administrator and heirs of Emma's estate claim an interest therein but such claims are unfounded. The prayer was that title to such real estate be quieted in said cross-petitioners. The answer to this cross-petition was a general denial.

On motion of plaintiff, the court struck from the answer of the heirs and administrators of Edward's estate the defense of the statute of limitations.

The court determined that Edward and Emma Windell entered into an oral contract of partnership, that there was no estoppel, waiver or laches established, that one half of the property in the name of Edward and the property in the name of Emma was accumulated from said partnership funds, that one half of said property belongs to the estate and heirs of Emma Windell, deceased, and the administrator and heirs of Edward Windell, deceased, shall account for the one half of said property. Objections and exceptions to such findings were filed and overruled. Decree was entered which established the status of the various parties to the estates of said decedents, establishing the partnership agreement, determining the specific property of the partnership both real and personal, that one half of the personal property in the hands of Edward at his death passed to the administrators of his estate and the other half to the administrators of Emma's estate, that title to three fourths of the real estate passed to the heirs of Edward and title to the remaining one fourth of said real estate to the heirs of Emma, dismissed the cross-petition of the heirs of Edward, ordered the administrators and heirs of Edward to make an accounting and entered judgment against the heirs of Edward Windell for the costs of the action. The defendants who are administrators and heirs of the estate of Edward Windell, deceased, appeal.

The principal contention asserted by appellants challenges the finding of the court that a partnership had been established. This is primarily a question of fact. Since this cause is triable here de novo, it is our duty to find the facts. However, the question differs somewhat from the usual case of a

disputed question of fact. Certain rules of law, hereafter developed, cast upon the appellees a greater burden than merely that of establishing the facts by a preponderance of the evidence. As hereafter demonstrated, they have the burden of establishing the existence of the alleged partnership by proof that was clear, satisfactory and convincing. We are of the opinion that the evidence fails to meet such requirement.

Daisy Patterson, a sister of Emma Windell and an appellee here, testified that in 1896, shortly after the marriage of Edward and Emma, she heard a conversation between them and her husband, Jesse. She described it as follows, ''Ed Windell said: 'Emma and I have agreed to be partners. We each have a certain amount of money which we have agreed to put into one pot on a fifty-fifty basis, and what we now have and what we add to that we will own equally, regardless of whose name it is in.' And Emma said: 'That is the only way to do it.' '' Jesse Patterson, now divorced from Daisy, described the conversation with almost identically the same words. On cross-examination he was very uncertain and sometimes mistaken about matters concerning which his recollection should have been at least equal to that concerning a conversation that took place over forty years ago.

Peter Swan testified to a declaration of Edward eight years previously that, ''he had a little money and he went to shaving small notes, and at the time he married his wife had several thousand dollars, and he said, we went to shaving notes and we done very well at it.''

Mrs. Nellie Montgomery testified to a conversation with Edward and Emma in 1909 as follows, ''He told us at that time that when he and his wife married they entered into a partnership agreement that they would put what they had into the pot together as partners, and each share alike, regardless of whose name the property was in afterwards. * * * She said that is the way we went into business. I had $5,000 in money, and Ed had a little farm and some old horses and we went in together. * * * Ed Windell said that the old lady kept the books of their business transactions.''

Mrs. Leona Rempke testified to a similar conversation with

the Windells in 1909, and again in 1934, and described a conversation with Ed Windell after Emma's death as follows:

"He told me how terrible it was—what a terrible shape he was left in. He said he had no one to look after the business while he was gone from the house—that she collected and kept the chattel stuff there, and it was terrible for him to be alone. And then he went on and told about how they went into business on a 50-50 basis, and how they got into the yoke and started to pull together, and that that was the way they made the money. And he said 50c of every dollar he owned belonged to his wife, and her heirs was to be the beneficiaries of that."

As opposed to the foregoing testimony, the witnesses for appellants established the following propositions: Edward and Emma Windell engaged in extensive litigation and employed a number of attorneys to represent them. In many cases the pleadings had to be verified. In all of these transactions each of the Windells claimed to be the absolute owner of his or her property, subject only to the dower rights of the other in real property. There was never any claim made by either that a partnership existed. Edward claimed to own the property standing in his name in Emma's presence and she made no objection. Edward stated in Emma's presence that he intended to leave his property to a nephew and she made no objection. A land contract, signed by Emma, expressly stipulated that her only interest therein was a dower interest. A deed to real estate, known as the Heisel property, created a joint tenancy with right of survivorship. Emma exercised no control over the management of Edward's business and at times refused to act for him, insisting that the party deal with Edward personally. Each of them acted in an individual capacity in transacting business. The letterheads used by Edward showed that he was engaged in business as an individual. There was no partnership name. There was no partnership bank account. No partnership books were found. No partnership income tax return was ever made. No partnership assessment was ever returned. No division of partnership profits was ever made, nor any pro-ration of partnership losses. This evidence stands undisputed.

In seeking to weaken the effect of appellants' evidence, counsel for appellees advance an amazing argument. They state:

"Appellants place much stress on the fact that there was no partnership name, no partnership bank account and that they acted as individuals. They had no occasion to have a partnership name or a partnership bank account. They were in the business of shaving notes and a partnership name would have gotten them tangled up with the law of usury. Edward could loan the money in Emma's name and exact an unconscionable commission as her agent without the transaction being usurious so far as outward appearances were concerned. Emma could likewise make loans in Edward's name. It was a distinct advantage to these people not to have a partnership name or a partnership bank account. It was to their advantage to hold title to the property in their individual names and to institute and prosecute suits in their individual names."

From the foregoing, the transactions which appellees assert indicate a conspiracy, rather than a legal partnership.

Counsel further state:

"Appellants say that no partnership tax returns or assessment rolls were made. This pair of people were not taxpayers. Tax-dodging was their hobby. * * * They made no partnership income tax returns for the reason that if they had made such returns they would have been required to make individual tax returns and they did not make any individual income tax returns."

Counsel appeal to a court of equity, a court of good conscience. Can we say that such evidence of a legal partnership, which requires such a weird explanation to make it sound plausible, is clear, satisfactory and convincing?

In Malvern Nat. Bank v. Halliday, 195 Iowa 734, 739, 192 N. W. 843, 846, we state:

"The salient features of an ordinary partnership are (1) a community of interest in profits and losses (2) a community of interest in the capital employed and (3) a community of power in administration. These are the primary tests and constitute the indicia of the existence of a partnership. The rela-

tion is predicated on mutual consent and is evidenced by the terms of the contract, the conduct of the parties, and the circumstances surrounding the transaction. Westcott v. Gilman, 170 Cal. 562.''

In Richman v. Richman, 190 Iowa 462, 464, 180 N. W. 182, 183, we state, ''To prove partnership, it was necessary to prove that both parties had agreed to share the losses, as well as the profits, of the undertaking. Appellant admits that there was no agreement to share the losses.''

Under the record herein, there is no evidence that the parties to the alleged partnership agreement undertook to share in any losses or ever did share any losses. Also, the circumstances, surrounding the transactions, rather than supporting any theory of the existence of a partnership are wholly inconsistent therewith. And there are other matters to be considered.

As above pointed out, the evidence offered by appellees consists wholly of testimony concerning declarations of the decedents, most of which were asserted to have occurred many years before the trial herein. In the recent case of Williams v. Harrison, 228 Iowa 715, 722, 293 N. W. 41, 44, we state:

''Of testimony of the kind set out above relative to statements of a deceased declarant, this court has said: 'But such declarations, like other admissions, are generally regarded as unsatisfactory evidence on account of the ease with which they may be fabricated, the impossibility of contradiction, and the consequences which the slightest mistake or failure of memory may produce.' Ellis v. Newell, 120 Iowa 71, 73, 94 N. W. 463. 'Such declarations of a deceased person, testified to by witnesses who say they heard them many years before their testimony is given, are entitled to very little weight.' Boeck v. Milke, 141 Iowa 713, 718, 118 N. W. 874, 876, 120 N. W. 120. 'It has long been recognized in this state that testimony of this character is not very persuasive in its probative force.' Sharpe v. Wilson, 181 Iowa 753, 768, 161 N. W. 35, 40.

''The high degree of proof necessary to establish a claim such as the plaintiff makes, or claims of a kindred nature has been expressed by this court in varying language, but always to the same point, as the excerpts from the following decisions indi-

cate, to wit: 'clear and satisfactory proof', Johnston v. Johnston, 19 Iowa 74, 81; Runnels v. Anderson, 186 Iowa 1370, 1380, 173 N. W. 91, 94; 'clear and unequivocal', Bevington v. Bevington, 133 Iowa 351, 358, 110 N. W. 840, 843, 9 L. R. A., N. S., 508, 12 Ann. Cas. 490; 'clear, unequivocal, and definite', Truman v. Truman, 79 Iowa 506, 510, 44 N. W. 721, 722; Chew v. Holt, 111 Iowa 362, 364, 82 N. W. 901; Williamson v. Williamson, 4 Iowa 279; 'direct, positive, express, and unambiguous', Wilson v. Wilson, 99 Iowa 688, 692, 68 N. W. 910, 911; 'clear, definite and conclusive', McDonald v. Basom, 102 Iowa 419, 421, 71 N. W. 341, 342; Briles v. Goodrich, 116 Iowa 517, 518, 90 N. W. 354, 355; Boeck v. Milke, supra; 'clear, substantial and convincing,' Long v. Kline, 222 Iowa 81, 83, 268 N. W. 150, 151; 'clear, cogent, and convincing,' Black v. Nichols, 213 Iowa 976, 982, 240 N. W. 261, 263; 'clear, satisfactory, and convincing,' Stiles v. Breed, 151 Iowa 86, 91, 130 N. W. 376, 378; Sharpe v. Wilson, 181 Iowa 753, 756, 161 N. W. 35, 36, supra; Ford v. Young, 225 Iowa 956, 966, 282 N. W. 324.''

 The fact that the real estate herein stood in the name of Edward Windell also casts upon appellees the same burden as above stated relative to the quality of the evidence required herein. In Wagner v. Wagner, 208 Iowa 1004, 1009, 224 N. W. 583, 585, we state:

''A mere preponderance of the evidence is not sufficient to overcome the presumption arising from the possession of the legal title to the real property. The evidence for that purpose must be clear, convincing, and satisfactory. Kelley v. Kelley, 189 Iowa 311; Ratigan v. Ratigan, 181 Iowa 860; Hayes v. Dean, 182 Iowa 619.''

Considering the record herein, in the light of the principles of law above discussed, we are unable to sustain the decision of the court below. The evidence offered by appellees, when considered with the undisputed facts shown by appellants' evidence is not clear, satisfactory and convincing. It is insufficient to establish the existence of the partnership which appellees assert.

Accordingly, the decree is reversed and the cause remanded

with instructions to dismiss the action and enter a decree for appellants on their cross-petition.—Reversed.

SAGER, BLISS, WENNERSTRUM, and GARFIELD, JJ., concur.

STIGER, J., and HALE, C. J., dissent.

STIGER, J. (dissenting)—I cannot agree with the majority opinion. Mrs. Rempke, a disinterested witness, gave the following testimony in regard to a conversation between the Windells and Mr. Montgomery, brother-in-law of the witness, at the home of Mr. Montgomery:

"They told about them getting married, and their experience about getting married, and what they done after they did get married. They said that when they got married that Mr. Windell owned a little farm, and an old livery stable, and he said that Mrs. Windell had about $5,000 and they hitched the old horses to the $5,000.00 and started in business together on a 50-50 basis and in case that business was to be dissolved, or was to be dissolved, it was never to go from one party to the other, but it was to go to the exclusive heirs of each. It was an old song. It was a common conversation with them, about how they were in partnership together for life and death, and on a 50-50 basis. Mrs. Windell joined in the conversation and she said that was the way that they agreed, regardless of whose name the property was in."

Mrs. Rempke also testified that the Windells, in 1934, modified their original contract and agreed that "if Mrs. Windell died first Mr. Windell would have the use of the property until he died and it would then go to their respective heirs." From 1910 to 1931 mortgages were taken in the name of Emma Windell in an amount exceeding $60,000. At the time of her death title to all their property, with minor exceptions, was in Edward Windell. The Windells listed moneys and credits for assessment only a few times. The record shows that in 1934 they listed securities for taxation in the name of Edward and Emma Windell in the sum of $14,000. All of the above testimony is omitted from the majority opinion. The statement in the majority opinion that Mrs. Windell did not exercise any dominion

or control over the partnership property is contrary to the record. The statement in the majority opinion that there is no evidence that the parties to the alleged partnership agreement undertook to share in any losses overlooks the rule that if the evidence shows a community of interest in capital and profits, mutual liability for losses will be implied in the absence of evidence of a contrary intention. Citizens Bank of Milo v. Scott & Son, 217 Iowa 584, 250 N. W. 626.

The majority opinion rests to a considerable extent on the gratuitous and perhaps unfortunate statement of appellees' counsel in argument relative to usurious transactions by the Windells. The question of usury or conspiracy was not raised in the lower court nor on appeal by appellants. The sole issue presented by appellants on this appeal is whether or not there was a partnership. The following statement in the majority opinion ''from the foregoing, the transactions which appellees assert indicate a conspiracy, rather than a legal partnership'' is unwarranted.

The testimony of appellees' witnesses in regard to the terms of the partnership agreement, as told by the Windells repeatedly from 1896 to 1936, is clear and unequivocal. There is nothing in the record that tends to impeach these witnesses.

In In re Estate of Rich, 199 Iowa 902, 916, 200 N. W. 713, 719, it is stated:

''It is true that declarations or admissions deliberately made, clearly remembered, and correctly given, are often satisfactory evidence. But the human mind and memory are subject to much imperfection; and such declarations, made years before, not clearly remembered or accurately stated, should be cautiously received.''

Appellees' case does not rest solely on admissions made in 1896. There is satisfactory evidence of like admissions made in 1909, 1930 and 1934. We find nothing in the record to justify the conclusion that plaintiff's witnesses are unworthy of belief. Several reputable witnesses, without any possible interest in the case, gave testimony that satisfactorily establishes the elements of a partnership. On the question of the credibility of appellees' witnesses, the trial court must have found their testi-

mony clear, satisfactory and convincing for he gave full weight and credence to their testimony, the decree adopting in detail all the material evidence of these witnesses.

I am of the opinion that the evidence of appellees meets the requirements of the strict rule correctly stated by appellants and that the trial court was right in finding a partnership was formed in 1896. Edward and Emma Windell made repeated declarations to their friends that they had formed a partnership, that they had contributed all the property they severally owned to the partnership; that it was to be equally owned whether taken in his or her name. They shared in the profits. Mrs. Windell participated in the affairs of the partnership. The evidence establishes a community of interest in the capital employed, a community of power in administration, a community of interest in the profits and, by implication, a mutual liability for losses. It is well settled that if the evidence shows a community of interest in capital and profits, mutual liability for losses will be implied in the absence of evidence of a contrary intention. Citizens Bank of Milo v. Scott & Son, 217 Iowa 584, 250 N. W. 626; Farmers & Merchants Nat. Bank v. Anderson, 216 Iowa 988, 250 N. W. 214.

The facts that Windell brought suits relating to property to which he had title in his name; that Mrs. Windell did likewise; that they did not advise their attorneys of the partnership relation; that they did not carry on the business in a partnership name; that there was no partnership bank account, are of no material significance in view of the evidence satisfactorily proving that they formed a partnership soon after they were married.

As stated, at the time of the death of Mrs. Windell, title to the property was in Windell. It is true, as contended by appellants, that appellees had the burden of overcoming the presumption of ownership arising from the legal title to property. To overcome the presumption arising from his legal title that Windell owned the property individually, and to establish a resulting trust for the partnership, the evidence must be clear, satisfactory and convincing. Wagner v. Wagner, 208 Iowa 1004, 224 N. W. 583; Smith v. Smith, 179 Iowa 1365, 160 N. W. 756. This presumption was overcome by proof of the partnership

which provided for taking title to partnership property in the name of the individual partners.

I would affirm the decree of the trial court which divides the partnership property between the heirs of Mr. and Mrs. Windell. The majority opinion fails to give the finding of the trial court that there was a partnership the weight it was entitled to in a case of this kind. Hatheway v. Hanson, 230 Iowa 386, 297 N. W. 824.