W. H. CROOKS, Administrator of the Estate of H. M. Case, Deceased, Appellant, v. F. W. SMITH-PETERSON AND THE UNKNOWN HEIRS OF JOSEPHINE SMITH, Deceased, Appellees.

Deeds: MENTAL WEAKNESS: EVIDENCE. The evidence in an action to set aside a deed on the ground of mental weakness, given by an aged grantor to one not a relative in consideration for past and future services, is considered and held insufficient to avoid the conveyance, there appearing no fraud in the transaction.

*Appeal from Boone District Court.*—HON. J. R. WHITAKER, Judge.

WEDNESDAY, APRIL 6, 1904.

ACTION in equity to cancel deed. Decree dismissing bill, and plaintiff appeals.—*Affirmed.*

*D. R. Hindman* and *Stevens & Fry* for appellant.

*J. J. Snell* and *S. R. Dyer* for appellees.

WEAVER, J.—The plaintiff is administrator with will annexed of the estate of H. M. Case, who died in Boone,

Iowa, about the month of January, 1902, at the age of eighty years. He left no lineal descendants, and his nearest surviving kin were brothers and sisters, or children of deceased brothers and sisters. He had been married, but his wife died some fourteen years prior to his decease. Some twenty-five or thirty years prior to his death, and during the lifetime of his wife, they took into their family (whether by formal adoption or otherwise is not shown) a girl known as Josie Hanson. She remained with them, and, upon the death of Mrs. Case, continued to keep house and care ɪor the old gentleman. In the year 1892, Mr. Case executed a will which provided for the distribution of the bulk of his estate, consisting of a house and lot, said to be worth about $1,800, and moneys and credits not estimated in the record, among his family relatives, and giving to Josie Hanson a legacy of $200. As the years wore on, the infirmities of age grew upon the testator, and Miss Hanson seems to have given him faithful and competent service, and to have had little or no assistance in attending to his wants. In 1899 the fact that she was deserving of some substantial return for her long devotion to the old gentleman's care and comfort became a matter of discussion among the immediate neighbors and friends of the family, and, at their suggestion, George W. Crooks, an experienced lawyer and personal friend of Mr. Case, prepared a form of a deed from Case to Josie Hanson of the house and lot above referred to, reserving to the grantor the use, rents, and profits of the property for the term of his natural life. The expressed consideration for the conveyance as at first written by Mr. Crooks was "One Dollar and services." With this instrument, Mr. Crooks called upon Mr. Case, and frankly disclosed to him the nature of his errand. It would seem that the matter had never before been mentioned to Case, and he called Miss Hanson into the room and spoke to her of the matter, saying, "You don't want to turn me out of doors?" or words to that effect. She assured him she had no such purpose, and asked if she had not always used him right. He took the deed from Mr. Crooks and read

it for himself.   At his suggestion the expressed consideration
"One Dollar and services" was modified by adding thereto
the words "to be rendered," and, saying that if any one was
entitled to the property he supposed Josie ought to be, be-
cause she had done as much or more for him than any other
person except his wife, he directed pen and ink to be brought,
and then signed and acknowledged the conveyance.   It is to
be said, and it is a circumstance upon which appellant places
much emphasis, that, when the grantor read the deed over be-
fore signing it, he was considerably agitated and shed tears.
We think, however, there is an entire absence   of evidence
tending to show any pressure or undue influence brought to
bear upon him, and that the execution of the paper was an
act of his own free will.   His conduct when the subject was
broached by Mr. Crooks makes it clear that Miss Hanson had
not been urging the matter upon his attention, and the high
character of Mr. Crooks is a sufficient guaranty that in giving
his testimony he has neither withheld nor misrepresented any
material fact in connection with the interview then had be-
tween the parties.   Aside from an explanation of the nature
of the deed, no argument was employed to induce the gran-
tor to execute it.   Indeed, upon having his attention turned
in that direction, he appears to have recognized the approp-
riateness and justice of such a conveyance as a suitable re-
cognition and reward to one who had given to his service and
care the best years of her life.   After the deed was made,
Miss Hanson continued with the grantor as before.   Some
months later she married the defendant Smith, and, on going
to live with her husband, Case rented his house and went
with her to her new home, where he lived substantially all,
is not all, the remainder of his life. About four months before
the death of Case, Josie Hanson Smith died intestate, at the
age of forty years, and whatever interest she had in the house
and lot passed to her surviving husband and heirs at law, all
of whom are made defendants in this proceeding

There is considerable testimony on either side as to the
mental condition of Mr. Case at and about the time the deed

was made. We think it unnecessary to discuss it in detail.
It is shown with reasonable certainty that in his later years
Mr. Case became, to a considerable extent, enfeebled in body
and mind. He was forgetful, and did not always recognize
old acquaintances, and would sometimes lose his way on the
streets; but that he had reached such condition of imbecility
as not to fairly comprehend the nature of an ordinary busi-
ness transaction is by no means proven. When taken alto-
gether, we think the truth to be well stated in the language
of the witness Ericson who says that, while he was slowly
failing, and "his mind was not as active as it had been, when
he took his time to think he seemed to know what he was talk-
ing about and what he was doing." This is not such a men-
tal condition as will in itself be sufficient to avoid the convey-
ance, although, if there be any showing of fraud or over-
reaching, to the disadvantage of a person thus enfeebled, the
courts will be prompt to interfere for his protection. See
*Wilkie v. Sassen,* 123 Iowa, 421. Such a showing has not
been made here. *Marmon v. Marmon,* 47 Iowa, 122; *Reeves
v. Howard,* 118 Iowa, 121; *West v. Douglts,* 145 Ill. 164 (34
N. E. Rep. 141).

So far as the record discloses, the conveyance to Josie
Hanson was not an unnatural or unjust thing, and that fact
tends to strengthen the presumption that the grantor acted
intelligently in making it. He had no child of his own. His
collateral relatives, absorbed in their own families and their
own private affairs, could not and did not give to him the
care and attention which his age and weakness demanded.
Josie Hanson appears to have earned his grateful considera-
tion. From girlhood to the age of forty years she remained
the stay of his home and the servant of his needs. Had the
old gentleman recognized these services with nothing but a
pittance of $200, it would have been a reproach upon his
memory. The collateral relatives had no special claim upon
his bounty or upon his property. He had the undoubted
right to give it to the young woman, as he did give it, and
no good reason has been shown for avoiding the conveyance.

We have not averted to the admitted fact that some months after the making of this deed a guardian was appointed to take charge of the grantor's property. We have, however, given the circumstance such weight as we think it entitled to, but remain of the opinion that at the date of the deed he had sufficient mental capacity to make it, and that there was an entire absence of fraud and undue influence. The fact that before signing the deed the old gentleman wept may show some weakness of mind, but tears upon such an occasion are not necessarily proof of imbecility or of overpowering influence exerted by another. He was an old man. The instrument was, in a sense, testamentary in character. It, of necessity, reminded him that the end of his earthly journey was approaching. His conversation shows that the act in which he was engaged brought to his mind the memory of his deceased wife. In old age the fountain of tears is easily moved, and that he should weep is not such a remarkable thing as to overcome the general tendency of the evidence to the effect that he was of reasonably sound and disposing mind.

We see no reason for disturbing the result arrived at by the district court, and its decree is AFFIRMED.