BEN W. WILKIE, as Guardian of Mary Wilkie, Appellee, **v.**
HERMAN SASSEN, Appellant.

Rescission of Contract: ILLITERACY OF VENDOR:   UNDUE ADVAN-
1   TAGE:   EVIDENCE.    Mental weakness alone will not justify
the setting aside of a contract for the sale of land, but where
it also appears that by reason thereof a party has been led into
an improvident contract, a much less showing of active fraud
is required than where the parties stand upon equal footing.
Evidence considered and held to justify a decree setting aside
the contract because of the grantor's mental weakness, of
which due advantage was taken.

Trial De Novo.    Although a suit to annul a contract for the sale
2   of land is triable *de novo* on appeal and must be determined
on the record, still the finding of the trial court will be dis-
turbed with reluctance.

Amended Abstract:   COSTS.    Where an amended abstract aids the
3   court in reaching a conclusion, its cost will not be taxed to the
party submitting it.

*Appeal from Marshall District Court.*—HON. OBED CAS-
WELL, Judge.

TUESDAY, APRIL 5, 1904.

ACTION in equity to annul contract for sale of land. De-
cree for plaintiff, and defendant appeals.—*Affirmed.*

*Anthony C. Daly* for appellant.

*C. H. Van Law* for appellee.

WEAVER, J.—On January 26, 1901, Mary Wilkie, being
the owner of one hundred twenty acres of land in Marshall
county, entered into a written contract to sell and convey the
same to the defendant, Herman Sassen.   Soon
thereafter she was placed under the guardian-
ship of the plaintiff, who began this action to
annul said contract, alleging that at the time of
its execution Mary Wilkie was of weak and un-

*(margin: RESCISSION of contract: illiteracy of vendor; undue advantage: evidence.)*

*(margin references: 123  421 | 123  442 | 123  421 | 126  571)*

sound mind, ignorant, illiterate, and unable to intelligently transact business; that defendant obtained said contract by fraud and deceit and that the price agreed to be paid for the land was grossly inadequate. The testimony fairly establishes the following facts: Mary Wilkie is a native of Germany, who speaks and understands the English language very imperfectly. She is also very illiterate, being unable to read or to write her name, the contract in suit being subscribed by her mark. It also quite clearly appears that she is somewhat below the general average in native intelligence. She is a married woman with several adult children, but seems to have been separated, though not divorced from her husband. In the year 1895 she entered into a contract to sell the land in controversy to one Schell for $2,000, which was very much less than its value. She was then placed under guardianship, and a cancellation of the contract procured. Later the guardian was discharged, and Mrs. Wilkie was restored to the control of her property. The contract with defendant provided for a sale of the land for $6,500, or about $54 per acre. The evidence as to its fair value at that time is quite conflicting, but the preponderance is to the effect that it was worth about $65 per acre. The land included the family homestead, and the contract was not signed by Mrs. Wilkie's husband. Concerning the circumstances leading up to and surrounding the execution of the contract in controversy, it is difficult to arrive at any entirely satisfactory conclusion upon the evidence. According to Mrs. Wilkie's story, a neighbor, Mrs. Timbusch, called upon her, and while there Mrs. Wilkie became excited and worried over some trival matter concerning the sale of a few pounds of butter to another person, and while in that mood Mrs. Timbusch advised her to sell her land, and thus rid herself of the bother and trouble of caring for it. She claims, also, that Mrs. Timbusch informed her that defendant would buy the property. On the following day the two women went together to the defendant's home, and remained over night. During this visit the sale of the land was verbally arranged, and defendant paid Mrs. Wilkie $50.

Her sons, who were living in the same vicinity, and on whom she depended to a great extent in business matters, were not consulted, but on the following morning, as the party drove to Marshalltown to have the contract prepared, they stopped at the home of a daughter, who accompanied them, and was present when the instrument was signed. It should also be said that while on the road to Marshalltown the party met one of Mrs. Wilkie's sons, but did not inform him of the proposed sale or of their purpose in going to the city.

It is the theory of the plaintiff, and there is considerable in the evidence to corroborate it, that Mrs. Timbusch was quite active in inducing Mrs. Wilkie to sell the land to defendant, and but for her influence the sale would not have been made. On the other hand, there is no showing that Mrs. Timbusch was particularly interested in the defendant's behalf, or that she had any other purpose to subserve than such as actuates many persons who feel themselves commissioned to manage the affairs of their friends and neighbors. Neither is there any showing of misrepresentation or false statement by the defendant in the negotiations. But the fact of this woman's ignorance and feeble mental capacity, of her prior subjection to guardianship as a person of unsound mind, must have been a matter of general notoriety in that neighborhood, and in negotiating a contract with her in his own home, where she had no independent advice or assistance, and without notice to her children, and the further fact that on meeting her son, as above noted, before the contract was signed, he failed to frankly inform him of the deal about to be consummated, afford strong reason for the conclusion that he realized the undue advantage he was obtaining. In view of these facts, we do not think it necessary to find any active fraud on part of the defendant to uphold the decree of the trial court setting aside and annulling the contract. The woman was of such ignorance and weakness of mind as rendered her incompetent to fairly guard and protect her own interest in such a transaction, and by reason of that fact the defendant obtained an advantage over her. The contract has

never been consummated by conveyance, and the defendant has never paid anything upon the purchase of the land except the sum of $50, a return of which has been duly tendered. Had the contract been carried out, the money paid, and title transferred, we might not be disposed to interfere. As it is, the annulment of the agreement and restoration of the parties to their former status in reference to the property can be equitably decreed, and neither party suffer substantial injury. If this action had not been brought, and Mr. Sassen had sued for its specific performance, no court of equity would have ordered it upon the showing made in this record.

It is true, as indicated in the authorities cited by appellant, that mere weakness of intellect in a party to a contract will not of itself be sufficient to justify a decree setting it aside; but when that weakness is shown, and it further appears that by reason thereof such party has been led into a grossly improvident or disadvantageous contract, it requires a much less showing of active fraud in the other party to invalidate it than would be necessary where the parties stand upon a more equal footing. *Hinchman v. Emmans' Adm'rs,* 1 N. J. Eq. 100; *McFaddin v. Vincent,* 21 Tex. 47; *Allore v. Jewell,* 94 U. S. 506 (24 L. Ed. 260); *Longmate v. Ledger,* 2 Giff. 157; *Neely v. Anderson,* 2 Strob. Eq. 267; *Hale v. Brown,* 11 Ala. 87; *Conley v. Nailor,* 118 U. S. 133 (6 Sup. Ct. Rep. 1001, 30 L. Ed. 112).

While the case is triable here *de novo,* and we must decide it upon our own impression from the record as to the equities of the parties, we nevertheless cannot overlook the fact that in all cases of this nature, where so much depends on the character, candor, and intelligence of witnesses, the trial court stands in position to arrive at the truth of a disputed fact much more accurately than it is possible for us to do, and we disturb such findings with reluctance. We are of the opinion that the decree appealed from is right, and it should be affirmed.

2. TRIAL de novo.

A motion has been submitted to tax cost of amended abstract to the appellee. It appears, however, to supply some 3. AMENDED omissions in the original abstract, and affords abstract: cost. assistance to us in arriving at our conclusion. The motion is therefore denied.—AFFIRMED.