BARBARA HARRIS, Appellee, v. N. L. HARRIS, Appellant.

**Divorce:**   TRIAL DE NOVO:   CREUL AND INHUMANE TREATMENT:   EVIDENCE.   An action for divorce is triable anew in the appellate court on the record as made below; but where the evidence is in dispute, and the appearance and demeanor of the witnesses may have had some decisive effect on the decision of the presiding judge, the appellate court will be reluctant to disturb its finding.   In this action for divorce on the ground of cruel and inhuman treatment the evidence is held to support the finding that the claims made by the plaintiff in her petition were substantially true.

*Appeal from Mahaska District Court.*—HON. K. E. WILLCOCKSON, Judge.

TUESDAY, FEBRUARY 11, 1913.

PLAINTIFF brings this action for a divorce and alimony, and charges cruel and inhuman treatment. Decree for plaintiff, and defendant appeals.—*Affirmed.*

*W. H. Keating,* for appellant.

*John F. & Wm. R. Lacey,* for appellee.

GAYNOR, J.—It appears from the record in this case that the plaintiff and defendant were married on or about the 27th day of January, 1909; that the defendant had been married before, his marriage with his first wife occurring in the year 1891; that she obtained a divorce from him on the ground of adultery on the 23d day of December, 1908; that, after his divorce from his first wife, he came to live with plaintiff's parents and resided with them as a boarder at their home, until his marriage with the plaintiff, a little less than a month after his divorce; that, to avoid the law prohibiting marriage within one year from the granting of the decree of divorce, plaintiff and defendant went to Missouri, and were married there. It appears that, after plaintiff's marriage to the defendant, one Ida L. Shoemaker brought an action against the defendant, the petition being filed March 10, 1909, in which she claimed damages on account of a breach of promise of marriage, alleging that the promise of marriage was made about the 25th day of December, 1908, or about two days after the first wife had obtained a divorce from him. Defendant in answer to the petition of Ida L. Shoemaker charging him with breach of promise of marriage alleged, among other things, that the said Ida L. Shoemaker was a woman of notoriously unchaste character, and had been for years, and yet admits in his answer that he rented and paid the rent for the house in which she lived for more than a year prior to January 5, 1909, and permitted

her to remain and occupy said house; that he purchased all her wearing apparel, paid her grocery bills, paid for the care and keeping of her son, and also provided for the care and keeping of her mother, and alleges that whatever relationship was sustained between him and the said Ida L. Shoemaker the same was fully paid by defendant to her. In answer to his first wife's petition in the suit in which she was granted a divorce from him on the grounds of adultery, he, under oath, denied any infidelity during his marriage with her. The plaintiff in this case predicates her right to a divorce on the grounds of cruel and inhuman treatment endangering her life. The general allegations of her petition, followed by specific instances in the support of the claim, are the using of brutal and opprobious language to, of, and concerning her, general unkindness, mistreatment while she was sick, brutal sexual relations, excessive indulgence, all of which she claims rendered her sick, nervous, impaired her health and strength, reduced her in flesh, and, if permitted to continue, would imperil and endanger her life, all of which defendant denies. This case was tried to the court below on oral testimony. The court had the opportunity to, and did, see and observe the demeanor of the witness while upon the stand, their method of testifying, their apparent candor or otherwise, their bias or prejudice, and all other facts which go to affect the weight or credibility of the evidence given, and in this respect was in a better position to pass upon and weigh the evidence offered and submitted in support of the claims of the contending parties than it is possible for this court to be. True, this case is triable de novo here, and it is the duty of this court to decide the case upon the record here presented yet we cannot, and do not, overlook the fact that in cases of this kind the probative force of testimony depends largely upon the apparent intelligence of the witnesses, their character and candor, as they appear upon the stand in the trial of the cause, that the presiding judge, seeing and hearing the witnesses examined

before him, stands in a better position to arrive more correctly at the truth than it is possible for us to do, and, where the court sitting upon the trial appears to have acted without prejudice or bias for or against either party, it is with reluctance that we disturb its findings. Especially is this true where the evidence is close or conflicting, and the appearance and manner of the witnesses testifying might have the effect of turning the scales of justice one way or the other. See *Johnson v. Insurance Company,* 126 Iowa, 565. See *Wilkie v. Sassen,* 123 Iowa, 421.

The evidence in this case is conflicting. The trial court found for the plaintiff. No good purpose can be served in setting out the evidence upon which the court predicated its judgment. Nor do we deem it necessary to so do. The evidence is not of a character that ought to be set out at any length. Suffice it to say that we have read the evidence in detail, and our reading has satisfied us that the evidence warranted the trial court in finding that the claims made by the plaintiff in her petition were substantially true; that the defendant was a man of gross sexual appetite, dominated and controlled by his passion, and his treatment of the plaintiff, as detailed by her, was cruel and inhuman, and such as, if permitted to continue, would endanger her health and life. True, the defendant denies the plaintiff's statements, but the history of his life and conduct gives support to what she says. He says he loves the plaintiff. He said he loved his first wife, yet in his testimony he says, "I had illicit relationships with this Ida L. Shoemaker during one year," and this while living with his first wife, Edna. Do such men know what love is? Do they distinguish it from the brutal passions born of lustful desire? As he sought the Shoemaker woman, so he sought this young Austrian girl. His mental attitude towards each was the same at the beginning, and, when his passion had spent its novel force, his attitude towards her was again the same as when he abandoned the caresses of his paramour.

He loved her, not that he could give, but that he might receive. Love that is grossly sensual soon burns to ashes. He loved the plaintiff for the gross pleasure he got from her wifely submission to his brutal sensual desires, and his love for her never rose above that, and when she said, "My God! is this married life?" and, "I submitted under protest to his demands because I thought it was my wifely duty, until it became intolerable"—she painted a picture that no man can look upon and say, "This is a man," without shame and humiliation for his sex. As to the effect of the treatment she received, Dr. McClean was called and testified that he treated the plaintiff in February and January, 1911, and among other things he testified that her nervous system was showing very marked signs of nervous prostration, or nervous breakdown. She was unable to control her nerves. It was hard for her to keep her mind on any one subject, follow any line closely. She was disturbed very noticeably, and had muscular symptoms as well. The doctor does not pretend to say that these conditions were caused by her husband's treatment. This he could not know, and it was for the court to say from all the record whether it was or not. A hypothetical question was put to this doctor in the following language: "Suppose the woman was twenty-seven years old, had been married about three years, had been abused by her husband in the way of language charging that she had been unfaithful to him, that she was a bad character, and, in addition to this, had been subjected to excessive sexual relations, continuing during the menstrual period, what would you say as to whether the condition you found there on this visit, could be reasonably attributed to these circumstances?" and he answered, "Yes, it could. It could be attributed pretty closely to that." As to the facts relied upon, we think the record discloses sufficient corroboration of the plaintiff's testimony to justify the decree.

On the question of alimony, we think the judgment of the court equitable and just, and the decree of the district court is *Affirmed.*