IN RE ESTATE OF J. W. HIGGINS.

R. D. HIGGINS, Administrator, et al., Appellants, v. H. L. HIG-
GINS et al., Appellees.

DECEMBER 14, 1928.

*Robert Elmer Long,* for appellants.

*Charles D. Goldsmith,* for appellees.

EVANS, J.—I.  We are first confronted with a motion by the appellees to strike the appellants' abstract, for want of compliance with our rules in the form thereof.  This motion was submitted with the case.  It has merit.  The abstract filed by appellants consists of a complete transcript of the entire probate proceeding, much of which has no bearing whatever upon the controversy presented for our consideration.  The verifications of inventories and reports have all been printed in full, including the certification of notary.  Procedure pertaining to the inheritance tax has all been included.  The inventory is printed several times.  The testimony is all set forth by question and answer, regardless of the importance of the particular testimony thus set forth.  We recognize that it is often desirable to set forth evidence by question and answer, where the particular evidence pertains to vital matters, and where the narrative form is not adequate to present the real meaning of the evidence.  In this case, the appellants have set forth preliminary and formal matters by question and answer.  The following is illustrative:

"Q.  Where do you live, Mr. Higgins?  A.  I live at Auburn, Iowa.  Q.  Are you acquainted with J. W. Higgins?  A.  Yes, sir.  Q.  What relation was he to you?  A.  My father.  Q.  Are you acting as administrator of the estate of J. W. Higgins, deceased?  A.  Yes, sir.  Q.  When were you appointed, approximately?  A.  I couldn't say the exact date, but somewhere along about the 4th or 5th of February.  Q.  And you have been acting ever since?  A.  Yes, sir.  Q.  You are the son of J. W. Higgins, deceased, did you say?  A.  Yes, sir."

This breach of rule is not excusable, and appellants must bear a penalty therefor.  In view of the fact that the record is brief in any event, and that the appellees have not suffered any prejudice from the breach, the court itself being the principal sufferer, we think it would be unduly harsh to dismiss the appeal.  As will hereinafter appear, we find that the judgment below must be reversed.  Such reversal would ordinarily carry the costs of

appellants' printing against the appellees. It will be our order that no cost of printing, either of abstract or argument, shall be taxed in favor of the appellants. To this extent the appellees' motion is sustained, and otherwise overruled.

II.   The evidence to be considered in this case is without conflict, and we have to do only with the legal effect thereof.  It appears without dispute that J. W. Higgins, the decedent, a resident of Hartley, was in his lifetime the owner of a note for $2,000 and the owner of two others for $1,000 each, and that he desired to make a gift of the first named note to his daughter Mrs. Jones, and of the other two notes to his son R. D. Higgins, in such a way that the enjoyment thereof should be postponed until after his death. With the purpose in mind to accomplish such a gift, on December 15, 1925, he went to the First National Bank of Hartley, and conferred with Davis, one of the bank officials, as to the proper method of making such a gift. Davis called Conn, an attorney, into the conference. As a result of this conference, Higgins caused the following indorsement to be made upon each of the notes for $1,000:

"December 15, 1925, I hereby give the within note to my son R. D. Higgins and direct delivery of same to him after my death. Signed. J. W. Higgins."

An identical indorsement was made upon the note for $2,000, except that the daughter, Mrs. Jones, was named as the donee therein.   The attorney advised, as the better course to pursue, that actual delivery be made.  Pursuant to such advice, the decedent placed the three notes in an envelope, which he sealed.   He addressed such envelope as follows: "Mr. R. D. Higgins, Auburn, Iowa."   Upon this envelope was the return card, directing return after five days to the First National Bank of Hartley.   This envelope is referred to in the record as the "inside envelope."   The decedent wrote thereon this further memorandum: "Not to be opened. untill i am Don With them J. W. Higgins."   The decedent inclosed it in another envelope, known in the record as the "outside envelope."   This "outside envelope" was addressed, "Mr. R. D. Higgins, Auburn, Iowa," and carried a return card into which the name "J. W. Higgins" was inserted.   This "outside envelope," so addressed, was mailed

by registered mail on December 17, 1925, and reached the addressee, R. D. Higgins, at his residence in Auburn, Iowa, on December 18, 1925. Higgins opened the "outside envelope." But, in obedience to the memorandum on the "inside envelope," he did not open the same until after the death of his father, which occurred on January 30, 1926. After the death of J. W. Higgins, R. D. Higgins opened the "inside envelope," and, finding the notes therein, with the indorsements, delivered to his sister the note for $2,000, and retained for himself the other two notes.

Upon this state of facts, the question presented is: Was there a completed gift? There can be no doubt, upon the evidence before us, as to what the real intent of the decedent was. So far as the two notes for $1,000 are concerned, there was an actual delivery to the donee, and we see no room for argument as to the sufficiency of it. It remains only to consider whether there was an adequate delivery of the gift to Mrs. Jones. It is a rule of general acceptance in most jurisdictions that a deed of gift of land may be made by a symbolic delivery, in lieu of an actual delivery, provided that the intent to make the gift is clearly and convincingly proved. This rule has been followed by us in many cases, beginning with *Newton v. Bealer*, 41 Iowa 334. We have held also, in many cases, that a donor may deliver his deed to a third person, for the purpose of passing the same to the donee after the death of the donor; and this may be done effectively without the knowledge of the donee. In such cases, the donor is deemed to constitute the custodian of the deed, as the agent of the donee. While the logic of such a rule might be questioned, argumentatively, it is, nevertheless, firmly established, as is indicated in the cases hereinafter cited. Though there is a legal distinction of method in the conveyance of real estate and of personal property, respectively, in that the former is usually accomplished by a formal paper conveyance, and the other is accomplished by actual delivery of the property, yet the requisite of delivery in some form is present in both cases. We have accordingly applied the rule of symbolic delivery and of delivery to a third person, for the benefit of the donee, to personal property, as well as to real estate. A comparatively recent case to that effect is *Gould v. Logan*, 198 Iowa 935. The whole subject of delivery of gifts is extensively covered in *McKemey v.*

*Ketchum,* 188 Iowa 1081. Another comparatively recent case on the same subject is *In re Estate of Stockham,* 193 Iowa 823, and likewise *Eaton v. Blood,* 201 Iowa 834. These late cases here cited contain full reviews of our prior decisions, and we see no occasion to repeat the discussion. Sufficient to say that every angle of the case before us is fully covered by our previous decisions.

That appellees have found no support in our prior decisions is indicated by the fact that they cite none of them, their citations being wholly confined to cases from other jurisdictions. Indeed, the only proposition argued by the appellees here is that the alleged gift was not *causa mortis.* Their argument in that respect is quite beside the mark. The question in this case is whether there was a completed gift. If yea, it would be quite immaterial whether it was *causa mortis* or *inter vivos.* The distinction between the two forms of gift is that a gift *causa mortis* is revocable by the donor. If, in this case, the donor had sought to revoke the gift, it might become important to determine whether it was a gift *causa mortis.* There was no attempted revocation by the donor. If he had sought to revoke, it would presumptively have been to his interest to contend that the gift *was causa mortis,* and was, therefore, revocable; whereas it would presumptively have been to the interest of the donees to contend that the gift was *not causa mortis,* but was a gift *inter vivos.* No contention is permissible to the objectors now that would not have been permissible to the donor in his lifetime. If the present contention of the objectors that the gift was *not causa mortis* should now be sustained, it could avail nothing of advantage to them.

We reach the conclusion that the intent of the decedent to make these gifts to these two donees was clearly and convincingly proven, and that such intent was accomplished by adequate delivery in the lifetime of the donor.

The judgment below is, accordingly,—*Reversed.*

All the justices concur.