PANAMA SAVINGS BANK, Appellee, v. MARY B. ARKFELD et al., Appellants.

No. 45143.

314

April 2, 1940.

Keith More and Jake S. More, for appellee.

Dan J. Buckley and Welch, Acrea & Welch, for appellants.

MILLER, J.—Plaintiff's petition was filed March 2, 1935. It asserted that on April 1, 1932, the defendants executed and delivered to plaintiff two notes, one for $3,000 due January 1, 1934, the other for $2,000 due January 1, 1935, each bearing interest at 6 percent per annum until due, and 8 percent per annum after maturity. To secure the payment of the notes, defendants executed, acknowledged and delivered to plaintiff a mortgage on 40 acres of land in Shelby county. The notes were asserted to be past due and unpaid with delinquent interest, making a total amount due January 1, 1935, in the sum of $5,951.80, the security was inadequate, the mortgage provided for a receiver and for statutory attorney fees. The prayer was for judgment for $5,951.80, with interest at 8 percent from January 1, 1935, and costs, including statutory attorney fee, for foreclosure of the mortgage and appointment of a receiver.

On March 13, 1935, defendants filed a motion for a continuance under the moratorium statute to March 1, 1937. A continuance was granted on April 3, 1935, and a conservator appointed. A second motion for continuance was filed March

27, 1937, and an order entered April 1, 1937, continuing the case to March 1, 1939, appointing a conservator to collect the rents, pay the taxes, insurance and cost of maintenance and any balance to be paid to the plaintiff.

The case proceeded to trial in March 1939. The abstract does not show when the answer was filed, but at the argument it was conceded that it was filed shortly before the case went to trial. The abstract shows no answer by defendant John J. Arkfeld, only an answer by defendant Mary B. Arkfeld. This answer asserts that the 40-acre tract is a homestead, owned by Mrs. Arkfeld, the mortgage was procured by fraud and duress, was not the voluntary act of such defendant, it was mutually agreed that the mortgage would not be foreclosed and was obtained solely for the purpose of making a showing to bank examiners, that the debt was an obligation of her husband only, and that the mortgage was without consideration. Mrs. Arkfeld also filed a cross-petition asserting that the mortgage was a cloud upon her title to the homestead and praying that title be quieted in her against plaintiff.

Plaintiff's reply to the answer and cross-petition consisted of a general denial of the affirmative defenses pleaded, a plea of the statute of limitations, and also claims of estoppel and laches. The court found that there was legal consideration for the notes and mortgage in suit, that there was no fraud or deceit practiced on the defendants, that the execution of the notes and mortgage constituted a voluntary act for valid consideration on the part of the defendant Mary B. Arkfeld, that the equities are with the plaintiff and that plaintiff is entitled to the relief prayed for. The court fixed the amount due at $7,369.93, entered judgment therefor with interest at the rate of 7 percent per annum and costs, including attorney fees. The mortgage was ordered foreclosed and a receiver was appointed to collect the rents and profits during the period of redemption. Jurisdiction was retained for the entry of further orders as might be advisable during such receivership. Defendants appeal.

The record shows that defendants lived upon a

farm of 120 acres, 80 acres were owned by John Arkfeld, and the homestead forty was owned by Mrs. Arkfeld. There was a first mortgage on John's 80 acres to the Roman Catholic Diocese, and defendants had executed a second mortgage thereon to the plaintiff bank for the amount of $5,000. The second mortgage was delinquent and the security was inadequate. The notes and mortgage on the 40-acre homestead were given as additional security for this pre-existing debt to the bank.

On the issues of fraud and want of consideration, the burden, of course, rested upon the defendants. They testified that, at the time the notes and mortgage were executed, Robert Sullivan, cashier of the bank, stated that the mortgage would never be foreclosed, that the bank would loan them $500 to operate the place and keep up the interest, that the second mortgage on the 80 acres would be released, together with a chattel mortgage. The cashier of the bank was a first cousin of Mrs. Arkfeld. His father had been cashier of the bank and had died shortly before this transaction occurred. Defendants testified that he stated to them that the bank examiners were making it hard for him, and it would be a great accommodation for him to have the mortgage on the forty to make a showing to them. Mrs. Arkfeld testified that she relied upon his statement that the mortgage would never be foreclosed. She was reluctant to sign the mortgage because the forty had been given to her by her father and he had exacted from her a promise that she would never mortgage it. She believed that Sullivan's statements were true and would not have signed the mortgage in question had it not been for them. There was some testimony besides that of Mr. and Mrs. Arkfeld offered to corroborate their testimony. It consisted of statements asserted to have been made by Sullivan to Mrs. Arkfeld's brothers, and repeated by them to her. There was also considerable testimony about the release of the chattel mortgage and the advancing of additional money by the bank. We do not deem it necessary to set out this testimony.

The cashier denied that he stated that the mortgage would never be foreclosed or that he wanted the mortgage merely to

show to the bank examiners. He denied that he stated he would loan or advance them $500 or that he would release the second mortgage. It was stipulated that the bank did not release the second mortgage on the 80 acres, did not release the lien of its chattel mortgage on defendants' personal property, and did not advance $500 as a part of this transaction.

The theory of the plaintiff is that the consideration for the mortgage was an extension of time on past-due indebtedness. On this question defendant John Arkfeld testified as follows:

"Robert told me and my wife that he would have to have additional security if he was going to extend the payment of this indebtedness. He then told me to ask or bring my wife, the two of us to come into the bank, to give a mortgage on the 40. That was our purpose for going there on that day, to give them that mortgage. I did execute the mortgage then with my wife."

Robert Sullivan, the cashier, testified that defendants were delinquent on the second mortgage when the mortgage was given on the forty. He also testified:

"The day Mary Arkfeld signed the mortgage on her homestead we agreed to extend the $5,000 and give them additional time on it. There was no interest paid at that time, and I took the note for the same principal amount."

Sullivan also testified that a record was made of this extension of time, but was unable to produce any written entry to substantiate his statement. He repeatedly testified that extension of time was granted in consideration for the mortgage on the 40 acres.

Defendants have strenuously urged upon us that the absence of any written evidence of the extension of time conclusively shows that there was no extension of time agreed upon. The second mortgage was not released, the notes secured thereby were not surrendered and the extension of time was not noted

on the second mortgage or the notes secured thereby. These facts are worthy of careful consideration. There are other facts to be considered with them, however.

As above stated, the cashier was Mrs. Arkfeld's first cousin. John Arkfeld's father was president of the bank. Mrs. Arkfeld's father was a vice-president of the bank. The parties were not strangers. John Arkfeld's testimony shows that he realized that the mortgage on the 40 acres was given to obtain an extension of time. The cashier testified that that was the agreement. The extension of time was, in fact, granted. Taking the record as a whole, the court was clearly justified in holding that the consideration for the mortgage on the 40 acres was the granting of an extension of time on the indebtedness then delinquent.

We have repeatedly recognized that the granting of an extension of time to pay an indebtedness is sufficient consideration to support the giving of additional security for a pre-existing debt. Green & Densmore v. Scranage, 19 Iowa 461; Low Bros. v. Anderson, 41 Iowa 476; Goff v. Milliron, 221 Iowa 998, 266 N. W. 526; C. I. T. Corp. v. Furrow, 227 Iowa 961, 289 N. W. 697.

We have also recognized repeatedly that, in the trial of an equity case, where the credibility of the witnesses is in issue, great weight will be given to the findings of the trial court. Wilkie v. Sassen, 123 Iowa 421, 424, 99 N. W. 124; Johnson v. Farmers Ins. Co., 126 Iowa 565, 571, 102 N. W. 502; Semper v. Englehart, 140 Iowa 286, 290, 118 N. W. 318; Breza v. Federal Cattle Loan Assn., 200 Iowa 507, 510, 205 N. W. 206; Kurth v. Kansas City Life Ins. Co., 227 Iowa 242, 252, 288 N. W. 90, 95.

In view of the testimony presented to the court below, we are inclined to give great weight to his finding on the credibility of the witnesses. There was evidence to justify his finding that there was an agreement to extend the time of payment of the indebtedness represented by the second mortgage, and such consideration was sufficient to support the notes and mortgage here in suit. He was also warranted in finding that

there was no showing of fraud which would vitiate the notes and mortgage. The burden of proof was on the defendants on each issue. He found that they did not sustain the burden. We are not disposed to disturb such finding.

The disposition of the questions above discussed makes it unnecessary for us to discuss or decide the issues that are based upon the statute of limitations and claim of estoppel and laches.

The decree is affirmed.—Affirmed.

HAMILTON, C. J., and SAGER, HALE, STIGER, BLISS, and MITCHELL, JJ., concur.