SARAH J. THOMPSON, Appellee, v. FRANCES THOMPSON, individually and as administratrix of estate of GEORGE HOWARD THOMPSON, Intervenor-Appellant.

No. 47454.

(Reported in 39 N. W. 2d 132)

SEPTEMBER 20, 1949.

Fleck & Jones, of Oskaloosa, for appellant.

Bray, Carson & McCoy, of Oskaloosa, for appellee.

BLISS, J.—The printed record needlessly sets out a great many pages by question and answer. We appreciate that such a presentation may be desirable at times in matters of particular importance where the narrative method seems inadequate, but

the preparation of the printed record should not be delegated wholly to the typist. Rule 340 (g) of Rules of Civil Procedure provides for penalties for such infractions. In re Estate of Higgins, 207 Iowa 95–97, 222 N. W. 401; Brien v. Davidson, 225 Iowa 595, 605, 606, 281 N. W. 150, 282 N. W. 480.

We will refer to the appellant as "the defendant." The suit was brought by plaintiff to quiet title to her residence property in Oskaloosa and to 213 acres, consisting of two farms, in Mahaska County. Her only living child was George Howard Thompson, who died intestate April 27, 1947, survived by his spouse, the defendant, and by plaintiff as his only heir. Defendant was appointed administratrix of his estate, and, in the inventory filed by her, listed all of the real estate described in plaintiff's petition as the property of the deceased, "subject to the life estate of Sarah J. Thompson."

It was to remove the cloud upon the title to her property, made by the recitation in the inventory, that plaintiff filed her petition on June 23, 1948, wherein she alleged that her said son never owned any of the real estate and had no interest therein at his death, and that neither his estate nor the defendant was entitled to any part thereof, and that she alone was absolute owner of the property.

Defendant filed answer and cross-petition, and, as administratrix, filed petition of intervention. These pleadings were, in substance, the same. The foundation for defendant's claim is thus alleged, in substance, in her answer: that on December 6, 1938, plaintiff executed and delivered four separate warranty deeds to the deceased conveying her residence property, her Mahaska County farms of eighty acres and one hundred thirty-three acres each, and a one-hundred-sixty-acre farm in Poweshiek County, "reserving unto the grantor a life estate"; that defendant does not have the deeds in her possession and does not know where they are but is credibly informed and believes that without the consent of deceased, "plaintiff wrongfully obtained possession of the said deeds, and they are in plaintiff's possession or have been destroyed by her"; that subsequent to the execution and delivery of the deeds to the deceased on December 6, 1938, he "at all times claimed title to the said real estate, subject to a life estate in Sarah J. Thompson."

It was the contention of plaintiff by pleading and assertion that she never executed any deed to her said son in which she reserved a life estate for herself; that she did on December 6, 1938, sign and acknowledge four separate warranty deeds to her home, and three farms, in each of which her son, Howard Thompson, was named as grantee, but that she never at any time in any way delivered any of said deeds to him, either manually, symbolically, impliedly, in escrow or otherwise, but at all times retained them undelivered and unrecorded in her possession, and at his death she had sole possession of them, and of the property.

Plaintiff offered, without objection, the deed records of her residence and of the two Mahaska County farms showing record title to each property in herself. She had previously sold the Poweshiek County farm. Plaintiff then rested. At the defendant's request, plaintiff then produced in court the four deeds which she had executed on December 6, 1938. The defendant offered them in evidence. Each deed was an absolute warranty deed in the usual form, and reserved no life estate or use in the grantor. Defendant then amended each of her pleadings by striking therefrom all allegations that the deeds "were subject to the life estate of Sarah J. Thompson," or "reserved to grantor a life estate."

The controlling question before the trial court was, and on appeal is, one of fact. Was there a delivery of the deeds by the plaintiff to the decedent at any time with the intention on her part immediately to pass title to the property to him? The court found that there had been no delivery of the deeds by Sarah J. Thompson to George Howard Thompson, grantee in the deeds, and decreed plaintiff to be the absolute owner of all of the real estate and quieted her title thereto against the defendant in person and as administratrix. We agree with the court's findings and its decree.

While there is direct conflict in the testimony on some matters, there are many material matters concerning which there is either no controversy, or the evidence preponderantly establishes them. We note some of them. Plaintiff was eighty-two years old at the time of the trial in the summer of 1948. Her husband, who had been county treasurer, died about 1931. So

far as the record shows, but one child was born to them—George Howard Thompson, commonly called Howard. He was afflicted with infantile paralysis when eight years old, which left him quite severely crippled in his spine and limbs. He and his mother were very congenial and were mutually helpful. He was able to get about without crutches and as he matured he could drive an automobile.

Plaintiff was left fairly well-to-do at her husband's death. She had sufficient judgment and business ability to manage her property thereafter. In looking after the farms and other business matters Howard always drove the automobile for her and assisted in various transactions. Her financial statements given to different banks, which extended credit to her, show that her assets were worth about $42,000 and her liabilities were approximately $6000. Sometimes she gave mortgage security on a farm and sometimes just her note was accepted.

Howard had always lived with his mother. She testified that she thought he would never marry because of his physical infirmities. There can be no doubt that she was desirous that all of her property should go to him on her death. It is just as certain that she was desirous of personally conserving it for him while she lived. In 1938 she was about seventy-two years old, but apparently in good health, for she is living at this time. She decided, probably after counseling with Howard, to prepare and sign deeds of the real estate to him as grantee, to have ready for delivery to him if her death became imminent. On December 6, 1938, she and Howard consulted a firm of lawyers whose professional services she had used on an earlier occasion. The four warranty deeds, hereinbefore mentioned, were prepared. She signed them and acknowledged their execution before one of the lawyers, who was a notary. He advised her to keep the deeds in a safe place. She and Howard had a safe-deposit box at the Mahaska State Bank to which each had access. She put the deeds in her purse or handbag and took and deposited them in this box.

She was asked as a witness what her intention was when she signed the deeds. Her answer was: "To make it easier for my son if he survived me. Q. And if he didn't survive you,

what was your intention? A. To use what I needed of my estate and make other plans later."

After the execution of these deeds the properties were operated and controlled by her in the same way as she had done before their execution. She leased the farms, received her cash or crop rentals, paid the taxes, insurance, and all upkeep expense. She claimed the property as her own, placed encumbrances on the property, signed financial statements that the property was all her own. Howard was with her when she made these claims and he never made any objection or statement to the contrary.

On June 18, 1941, when Howard was forty-one years old, and Frances Thompson, defendant, was thirty-one years old, they were married. She was a widow without children. She had been a schoolteacher and had saved some money and owned a residence property in another town. During the first year of their marriage they lived for the most part in plaintiff's home. They then acquired an apartment with the aid of a loan of $1500 from the plaintiff. There was some friction between plaintiff and defendant because the latter refused to sign the note for the loan. As a witness, defendant first denied that there was such a loan.

Sometime after the marriage, in 1941 or 1942, plaintiff learned that defendant had become a joint lessee of, and had access to, the safe-deposit box in the Mahaska State Bank. Plaintiff then went to the office of the lawyer-notary before whom she had signed and acknowledged the deeds and complained that defendant had access to these deeds and her other papers, and asked what she should do. She was advised to get possession of her deeds and papers. She and the lawyer-notary then proceeded to the bank to accomplish this but on the way the latter recalled that it was Thursday and the bank was closed. They proceeded no further. A few days later plaintiff, accompanied by Mrs. Read, an old friend, went to the bank box and took the deeds and her other papers and both went to the lawyer-notary's office, and plaintiff told him what she had done and asked what she should do with the deeds. He told her to place them in a safe-deposit box to which she would have sole access. Both plaintiff and Mrs. Read testified to these matters, and

there was no denial. Plaintiff leased a deposit box in the Iowa Trust & Savings Bank where she thereafter kept the deeds.

Howard knew that his mother had taken the deeds from their joint box and placed them in one to which she alone had access, and he made no protest to her about it. Their relations remained close and friendly and they continued to go about together in attending to the properties. To no one with whom his mother had business transactions about any of the properties did he ever assert any ownership or present interest in them. Plaintiff sold the Poweshiek County quarter section in June 1943. The purchaser testified that the contract price was $11,680, and that plaintiff executed and delivered the deed to him on February 21, 1944; the farm was unencumbered; defendant and Howard were present when the contract was made; Howard was present throughout the negotiations. The transaction was handled by the bank at Gibson. The representative of the bank who was active in the matter was a witness. His testimony was like that of the purchaser. The purchase price—part in cash and part by check—was delivered to plaintiff. Howard was present at all times and made no claim to the land or to any interest in it or to the purchase money. This banker financed the purchaser. He testified that if Howard had made any claim to the land "I wouldn't have loaned the money."

Mr. Moore, age eighty-two, farmer, an old friend of plaintiff and her husband, who was a member of the Mahaska County Board of Supervisors when plaintiff's husband was county treasurer, testified that Howard had told him of the offer which his mother had received for the farm in Poweshiek County near Barnesville, and that he thought his mother ought to sell it. The witness testified:

"I knew Howard Thompson. Had conversation with Howard every once in awhile. Mrs. Thompson and Howard talked to me about farming. I loaned Mrs. Thompson money once, in '38 or '37. Don't remember the date. It was paid back in '44. I know about the selling of the farm near Barnes City. I think I was paid out of the proceeds of that sale. I was paid off after it was sold anyway. Howard told me about his mother making out some deeds after I made this loan, told me how the title

was. The mother owned the land. Told me deeds were in safety deposit box at the bank. He didn't say they had been delivered to him. He did not claim ownership. He always spoke of it as belonging to his mother. My loan was made before Howard was married. He didn't sign the mortgage. He didn't sign the note."

This was a $3000 mortgage on the eighty-acre farm, as shown by the deed of it, of December 6, 1938.

Oliver Anderson, a banker at Fremont, and formerly at Wright, was a witness. Plaintiff made him a property statement, dated February 2, 1940, on a note of $1300 given by her for money borrowed from the bank. On January 21, 1941, she made another such statement on her unsecured promissory note for $2500. In these statements she listed the property described in the four deeds as her own and with title in her name. Howard was present when these statements were signed by her and assisted her in making them, but never made any claim of title or ownership in any of the property, real or personal. Later, this banker loaned her money on one of the Mahaska County farms—"on part of the Lacey farm." Howard was present at this transaction and said nothing about having any interest in the land. About this time she borrowed $2000 from the Mahaska State Bank on her note secured by mortgage on her home in Oskaloosa. Howard was present when this was done. Mr. Anderson testified that Howard told him he was to get her property if he outlived his mother. He then had him sign the note she was executing. He gave as his reason that Mrs. Thompson was old, and Howard was her only child, and he "knew it would be quite helpful to have son on note." There is no controversy between the litigants over the matters above set out.

The principal controversy in this case is in the testimony of plaintiff and the attorneys to whose office she went to have the four deeds prepared. On their part it is asserted that after the deeds were signed and acknowledged she was told that there should be a manual delivery of the deeds to Howard, and that she handed the deeds to him and he laid them on the table at which they were sitting in her home. There was

testimony that they had made contrary statements prior to. the trial. Plaintiff denied that any such delivery was.ever, discussed or that it took place. She testified that the transaction was in their office and not in her home, and that after the deeds were acknowledged she did not deliver them to Howard, but put them in her purse and at once took them to her safe-deposit box at the bank, and thereafter retained them in her possession, and never delivered them to him. The deeds were never recorded.

There was testimony in defendant's behalf that if the execution of the deeds became public by recording it would create ill feeling among plaintiff's collateral relatives, and. because of that they were not recorded. Such testimony and contention carry no conviction. Plaintiff's relatives well knew that the crippled boy whom she had cared for and nursed during the years of his affliction was the sole object of her love and care, and it may be reasonably assumed that none of them coveted any part of the modest patrimony which she and his father had conserved for his needs when they were gone. There was no particular effort made by either the plaintiff or Howard to keep the execution of the deeds a secret. The witness, Moore, testified that Howard had told him of them shortly after their execution. A cousin of Howard, several years his senior, testified that Howard had talked to her a number of times about them, and said that "the deeds had not been delivered to him and would not be unless he survived his mother." Defendant's witness Roberta Lorence testified that Howard had told her of them. The witness, Anderson, gave similar testimony. Plaintiff told Mrs. Read about the deeds.

Defendant alleged in her answer that plaintiff had "wrongfully obtained possession of the deeds." The evidence is to the contrary. She openly took them from the joint-deposit box and placed them in a private box of her own, and did so on the advice of the lawyer who testified that there was a manual delivery of the deeds to Howard. He admitted that when he advised her to get the deeds and place them in her box, where she would know they were safe, he did not tell her that the deeds belonged to Howard because of the manual delivery. It is significant that although his mother removed the deeds from the joint-deposit box to her own exclusive possession over five

years before Howard's death there is no persuasive evidence that he ever protested to her because of their removal. It is strong evidence that he had no legitimate basis for any complaint.

Defendant also alleged in her answer that subsequent to December 6, 1938, Howard at all times claimed title to all of the real estate. There is no evidence supporting this allegation.

The witness, Roberta Lorence, testified that the plaintiff told her that the farms were in Howard's name and all that she had was the life income from them. The deeds refute any such testimony. The court in its findings said:

"The defendant claimed first that the deeds were made subject to a life estate in Sarah J. Thompson, but the deeds show that there is no life estate reserved in them, and the defendant afterwards amended her answer and claimed that the property was an absolute conveyance without the reservation of any life estate. The one witness testified that she had a conversation with the plaintiff in which the plaintiff stated to her she had fixed it so that the farms were in Howard's name and all she wanted out of them was the life income. This evidence Mrs. [Sarah] Thompson denied, and the court is not impressed with the evidence of the witness Roberta Lorence."

The absolute control which plaintiff retained over her property, the various financial transactions in connection with it, and the obligations which she assumed, all speak definitely that she was not ready to and had no intention of parting absolutely with the title to the property when she signed the deeds, and confirm the verity of her testimony that she never delivered the deeds to Howard at the time of their execution or at any time thereafter.

I. Since the case is triable de novo here, it is our duty to find the facts. Our study of the printed record and the inferences fairly and reasonably deducible therefrom convince us that plaintiff fully established the allegations of her petition and was entitled to decree as prayed. Our confidence in the rightness of that conclusion is confirmed by the findings, conclusions and decree of the able trial court. While these are supported by

much undisputed evidence there was some evidence in sharp conflict. We recognize the better opportunity of the trial court, from seeing and hearing the witnesses, to more accurately pass upon their veracity, and the credibility of their testimony. For that reason this court and all courts have always accorded much weight to, and reliance upon, the findings and decree of the trial court when the testimony is conflicting, and disturb them with reluctance. In re Estate of Brooks, 229 Iowa 485, 492, 493, 294 N. W. 735; McKey-Fansher Co. v. Rowen, 232 Iowa 660, 666, 5 N. W. 2d 911; Lewis v. Lewis, 235 Iowa 693, 701, 17 N. W. 2d 407; Wilkie v. Sassen, 123 Iowa 421, 424, 99 N. W. 124; Robbins v. Robbins, 234 Iowa 650, 652, 12 N. W. 2d 564; Panama Sav. Bk. v. Arkfeld, 228 Iowa 313, 318, 291 N. W. 182; Swartwood v. Chance, 131 Iowa 714, 716, 109 N. W. 297; Johnson v. Farmers Ins. Co., 126 Iowa 565, 571, 102 N. W. 502; Harris v. Harris, 158 Iowa 555, 557, 558, 139 N. W. 896; Keplinger v. Barer, 234 Iowa 1135, 1137, 1138, 15 N. W. 2d 284.

II. It was the finding of the trial court and is the finding of this court that there was never a delivery of the deeds by the plaintiff to Howard. The intent to deliver a deed is the controlling and essential element in an effective delivery. The deeds in themselves are cogent evidence that there was no delivery and no intention on plaintiff's part to deliver them. The deeds were absolute conveyances without any reservations for her benefit. An effective delivery of the deeds would have passed title from her to her home and the income-producing farms. A transaction of that kind would have been contrary to common experience and far out of the usual and ordinary. Its unwisdom speaks most convincingly of the unlikelihood that it was ever effected or contemplated.

We have the plaintiff with record title to all of the property, in absolute control and possession of it, seeking to remove a cloud from its title. In opposition is defendant, out of possession, without muniment of title, without any written or paper claim to the property, seeking to establish, by parol testimony, absolute title in all of the property in Howard at his death, and since December 6, 1938. She offers to give plaintiff a life estate in the property, although such estate is not reserved in the deeds under which defendant claims title. Defendant pleads these

defensive matters in her answer, cross-petition, and petition of intervention. The burden which she assumes is a heavy one. The conduct of Howard and of his mother since the execution of the deeds effectively refute the claims and contentions of the defendant.

The words of Justice Evans in a dissenting opinion in a similar case—Burch v. Nicholson, 157 Iowa 502, 516, 137 N. W. 1066, 1072—are in point, to wit:

"If there was an intent to deliver the deed, there must have been an intent also to deliver immediate possession of the farm. But it is clear that the mother never parted with the possession of the farm, but held it as her own to the end of her life. Taking the circumstances as a whole, therefore, they present a strong and meritorious case as against the theory of the delivery of the deed. *In some respects these circumstances are more satisfactory than the direct evidence of partisan witnesses might have been. They are in their nature wholly indisputable* and thoroughly inconsistent with any theory of a completed transaction." (Italics ours.)

The court has many times announced that the presumption of ownership which follows the legal title can be overcome only by evidence which is clear, satisfactory and convincing. A preponderance of the evidence is not sufficient. In Cunningham v. Cunningham, 125 Iowa 681, 687, 101 N. W. 470, 472, the court stated:

"The appellee is seeking to avoid the plaintiff's legal title, and the burden is upon her to make good her claim. It is a familiar rule that the court will not overturn the legal title to property, or charge the holder of such title with an implied or resulting trust, save upon clear and satisfactory testimony. A mere preponderance of the evidence is not sufficient. It must be explicit, decisive, and leave the existence of no essential element to conjecture or to remote and uncertain inference. Murphy v. Hanscome, 76 Iowa [192], 194; Nelson v. Worrall, 20 Iowa [469], 470."

In Kelley v. Kelley, 189 Iowa 311, 317, 318, 177 N. W. 45, 47, we said:

"There is no more firmly established rule of law and equity than that the legal title to land held by a claimant in possession will not be set aside or burdened with an implied or resulting trust except upon clear and satisfactory proof. Malley v. Malley, 121 Iowa 237; Andrew v. Andrew, 114 Iowa 524 * * *. And, if the testimony, when fairly construed, is consistent with any reasonable theory which will allow the legal title to stand, no trust will be declared. Something more than a mere preponderance of the testimony is required. In re Estate of Mahin, 161 Iowa 459, 466."

In Wagner v. Wagner, 208 Iowa 1004, 1009, 224 N. W. 583, 585, the court stated:

"A mere preponderance of the evidence is not sufficient to overcome the presumption arising from the possession of the legal title to the real property. The evidence for that purpose must be clear, convincing, and satisfactory."

Similar language has been used by the court in many decisions. See New York Life Ins. Co. v. Clemens, 230 Iowa 279, 289, 297 N. W. 253; Smith v. Smith, 179 Iowa 1365, 1372, 160 N. W. 756; Miller v. Armstrong, 234 Iowa 1166, 1169, 15 N. W. 2d 265; Hyatt v. First National Bank, 193 Iowa 593, 597, 187 N. W. 949, 951 (shares of stock—"the proof must be clear, certain, satisfactory, and practically overwhelming"); Sinclair v. Allender, 238 Iowa 212, 221–224, 26 N. W. 2d 320, and cases cited.

Defendant has not only failed to meet the burden placed on her by the decisions noted above, but the preponderance of the evidence sustains the findings of fact and the decree of the district court. That decree is affirmed.—Affirmed.

HAYS, C. J., and HALE, SMITH, OLIVER, GARFIELD, MULRONEY, and WENNERSTRUM, JJ., concur.

MANTZ, J., not sitting.